IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| AIDA ELZAGALLY, *et al.*, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil No. 1:19-cv-0853-LMB-MSN |
|  | ) | |
| KHALIFA HAFTAR, | ) | |
|  | ) | |
| Defendant. | ) | |

## REPORT & RECOMMENDATION

This matter comes before the Court on plaintiffs' motion for default judgment (Dkt. No. 18). Having reviewed the record and the pleadings, the undersigned Magistrate Judge recommends denying plaintiffs' request for default judgment for the reasons that follow.

## I.    Procedural Background

On June 26, 2019, plaintiffs brought an action against defendant for violations of the Torture Victim Protection Act (TVPA) and Alien Tort Claims Act (ATCA), as well as for wrongful death and intentional infliction of emotional distress. (Dkt. No. 1). On August 27, 2019, a summons was issued to the defendant, Khalifa Haftar. (Dkt. No. 4). On October 17, 2019, defendant having not yet been served, the Court issued a show cause order. (Dkt. No. 5). In response, plaintiffs requested additional time to serve defendant, citing the difficulty of locating defendant in Libya. (Dkt. No. 6). The Court granted plaintiffs 30 additional days to serve defendant (Dkt. No. 7), and on December 4, 2019, plaintiffs filed an affidavit of service, attesting that the complaint was served on November 25, 2019. (Dkt. No. 8). Defendant was served via alternative means of service, in this case by filing the complaint in Libyan court. *Id*. Defendant failed to respond. Accordingly, on January 8, 2020, plaintiffs filed a request for entry of default. (Dkt. No. 10). The Clerk of Court filed an entry of

default on January 9, 2020. (Dkt. No. 12). On January 31, 2020, plaintiffs filed their motion for default judgment. (Dkt. No. 18). A hearing was held before the undersigned on February 21, 2020, at which no representative for the defendant appeared. (Dkt. No. 20). The undersigned granted plaintiffs leave to submit supplemental briefing within two weeks to address concerns regarding subject matter jurisdiction and personal jurisdiction. *Id*. On March 5, 2020, plaintiffs requested an additional week to submit supplemental briefing, and the Court granted this request. (Dkt. No. 23). Plaintiffs filed their supplemental memorandum in support of the motion for default judgment on March 13, 2020. (Dkt. No. 24).  Accordingly, the matter is now ripe for disposition.

## II.    Factual Background

The following facts are established by plaintiffs' complaint (Dkt. No. 1) as well as by their memorandum in support of the motion for default judgment. (Dkt. No. 18), supporting affidavits, and the supplemental memorandum in support of the motion for default judgment (Dkt. No. 24).

Plaintiffs are residents of the Republic of Libya whose family members were killed by forces under the control of defendant. (Dkt. No. 1) ¶¶ 7-16. Defendant Khalifa Haftar is a United States citizen who owns a residence in this judicial district. *Id*. at ¶ 18. Defendant Haftar has been deeply involved in Libyan military and political affairs for decades. In 1969, Haftar participated in the coup led by Colonel Muammar Ghaddafi which overthrew the Libyan monarchy. *Id*. at ¶ 19. Haftar subsequently served as a close ally to Ghaddafi, eventually becoming a senior military leader under his command. *Id*. at ¶¶ 20-21. It appears that defendant Haftar subsequently moved to the United States, returning to Libya in 2015. *Id.* at ¶ 22.  Once back in Libya Haftar formed a military force known as the Libyan National Army (LNA). Since 2015, this force, under Haftar's command, has been engaged in military operations, including operations which have killed innocent civilians. *Id.* at ¶¶ 28-31. Plaintiffs allege that defendant's forces kill civilians without any regard for human

life, and that his forces have specifically targeted civilian neighborhoods and hospitals. (Dkt. No. 18-1) 2.

Plaintiffs make specific allegations about the injuries attributable to defendant's forces. Plaintiffs Aida Elzagaly, Ayah Tunalli, Alaa Tunalli, Abdulhameed Tunalli, Adbulrrauf Tunalli, Muhammad Tunalli, and Adbuladeem Tunalli are the immediate family members of Msaddek Tunalli ("Tunalli"). *Id.* at ¶ 41. On April 4, 2019, Tunalli was killed as he helped evacuate civilians from an area under attack by defendant's forces. *Id.* at ¶ 33. These forces randomly shelled the entire area. Tunalli was killed by this indiscriminate shelling. *Id.* at ¶ 40. Tunalli's family members suffered trauma and a loss of financial support as a result of his death. *Id.* at ¶¶ 42-44.

Plaintiff Mais Ahmed Mayouf is the daughter of Mufida Sasi Abu Gasiah. *Id.* at ¶ 14. On April 16, 2019, Haftar and his forces launched missiles into the civilian neighborhood of Hay Alintassar in Trippoli in which Mufida Sasi Abu Gasiah, her mother, sister, and young daughter lived. *Id.* at ¶ 49. Defendant knew that numerous civilians lived in this neighborhood. *Id.* at ¶ 50. Nonetheless, Defendant Haftar launched missiles into the neighborhood. *Id.* at ¶ 51. Mufida Sasi Abu Gasiah, her mother and sister were all killed by the missile strike. Plaintiff Mais Ahmed Mayouf was the lone survivor and has suffered severe emotional trauma. *Id.* at ¶ 52

Plaintiff Abdulhameed Al-Harramah's son was Dr. Ayman Al-Harramah. *Id.* at ¶ 54. On April 6, 2019, Dr. Ayman al-Harramah was working in a civilian field hospital when Defendant Haftar indiscriminately bombed the hospital, killing Dr. Ayman al-Harramah. Plaintiff Abdulhameed Al-Harramah has suffered significant emotional harm from the loss of his son. *Id.* at ¶ 55.

## III.   Standard

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time

frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at \*2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). Here, because defendants have not answered or otherwise timely responded, the well-pleaded allegations of fact contained in the complaint are deemed to be admitted.

## IV. Jurisdiction, Venue, and Service of Process

A court must have both subject matter and personal jurisdiction over a defaulting defendant before it can render a default judgment. Here, the undersigned recommends that the Court find that it lacks subject matter jurisdiction.[1]

Plaintiff claims the Court has subject matter jurisdiction under the Torture Victim Protection Act of 1991, and the Alien Tort Claims Act. In relevant part, the Alien Tort Claims Act, 28

---

[1] While plaintiffs lack subject matter jurisdiction, personal jurisdiction does exist. Haftar is a U.S. citizen and Virginia property owner, but even if he were deemed a foreign defendant, Fed. R. Civ. P. 4(k)(2) provides that in situations with a foreign defendant not subject to jurisdiction in any state's courts, "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant" so long as "exercising jurisdiction is consistent with the United States Constitution and laws." Here, service was proper. Defendant Haftar was served on November 25, through alternative international service. (Dkt. No. 15). Fed. R. Civ. P. 4(f) states that service is acceptable "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction". A person is deemed served in Libya once the complaint is entered in the appropriate court in Libya. (Dkt. No. 15) Here, the summons and complaint have been entered in the North Tripoli First Instance Court. *Id.*

U.S.C.S. § 1350, states that "the district courts shall have original jurisdiction of any civil action by

an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."

The underlying tort alleged here is violation of the Torture Victim Protection Act.

The Act states that "[a]n individual who, under actual or apparent authority, or color of law, of any

foreign nation… subjects an individual to extrajudicial killing shall, in a civil action, be liable for

damages to the individual's legal representative, or to any person who may be a claimant in an

action for wrongful death." 28 U.S.C. § 1350.  For the purposes of the TVPA, "the term

'extrajudicial killing' means a deliberate killing not authorized by a previous judgment

pronounced by a regularly constituted court affording all the judicial guarantees which are

recognized as indispensable by civilized peoples. Such term, however, does not include any such

killing that, under international law, is lawfully carried out under the authority of a foreign nation."

*Id.*

Plaintiffs' allegations raise two issues. First, the TVPA expressly renders liable only those

individuals who have committed torture or extrajudicial killing under actual or apparent authority,

or color of law, of any foreign nation*." In re Terrorists Attacks on Sept. 11, 2001*, 740 F. Supp. 2d

494, 514 (S.D.N.Y. 2010), *aff'd sub nom. In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118

(2d Cir. 2013). Plaintiffs claim Haftar was acting under color of authority as the military head of the

Libyan forces. (Dkt. No. 1) at ¶ 61. For purposes of the TVPA, the state action concept requires that

a defendant is "alleged to control defined territory, control populations within its power, and to have

entered into agreements with other governments. It has a president, a legislature, and its own

currency… [although] it is likely that the state action concept, where applicable for some

violations… requires merely the semblance of official authority." *Kadic v. Karadzic*, 70 F.3d 232,

245 (2d Cir. 1995).   Plaintiffs have failed to adequately plead that defendant acted under color of

law. "The tenet that a court must accept a complaint's allegations as true is inapplicable to

threadbare recitals of a cause of action's elements, supported by mere conclusory statements."

*Ashcroft v. Iqbal*, 556 U.S. 662, (2009). Here, plaintiffs have provided the bare statement that

Haftar was acting under color of state authority, but plaintiffs have not plead specific facts, such as

control of defined territory or population, that would establish that defendant is acting on behalf of

an entity that bears the hallmarks of statehood.[2]

Second, extrajudicial killing means "a deliberated killing" under the terms of the statute

itself. In their supplemental memorandum in support of the motion for default judgement, plaintiffs

argue that many courts have held that indiscriminate brutality, known to result in deaths, rises to the

level of "extrajudicial killings". However, the case law plaintiffs cite is inapposite, and should not

be extended to the present circumstances.

In the case of *Ben-Rafael v. Islamic Republic of Iran*, the defendant was found liable for the

bombing of the Israeli embassy in Argentina by the terrorist group Hezbollah. *Ben-Rafael v. Islamic

Republic of Iran*, 540 F. Supp. 2d 39, 43 (D.D.C. 2008). The court found that this was a clear case

of extrajudicial killing under the TVPA. *Id*. at 53. The Iranian regime was also found liable for an

act of terrorism deemed "deliberate" as defined under the TVPA in *Sisso v. Islamic Republic of

Iran*, 2007 WL 2007582, at *7 (D.D.C. July 5, 2007). Both these cases, however, involved

deliberate acts of terrorism targeted at civilians. In *Sisso*, a terrorist deliberately detonated a suicide

vest on a bus in Tel Aviv, killing six people. *Id*. at *2. In *Ben-Rafael*, a suicide bomber drove a

pickup truck loaded with explosives into the front of the Israeli embassy in Buenos Aires, killing 29

people. In short, both these cases dealt with acts of terrorism. Plaintiffs contend that "much like

these cases, this matter alleges… indiscriminate bombing." (Dkt. No. 24) 3. But that is, in fact, the

---

[2] News reports indicate that Haftar's Libyan National Army has often been at odds with the country's internationally recognized Government of National Accord. AYMAN AL-WARFALLI, "Libyan Commander Haftar's Forces Say They Have Taken Sirte." REUTERS (Jan. 6, 2020), https://uk.reuters.com/article/uk-libya-security/libyan-commander-haftars-forces-say-they-have-taken-sirte-idUKKBN1Z51L0.

exact opposite of the facts of *Sisso* and *Ben-Rafael*, which involved deliberate, *discriminate* acts of murder, not civilian casualties resulting from indiscriminate bombing.

With regard to the killing of Msaddek Tunalli, for example, plaintiffs allege that defendant's forces were "randomly shelling the entire area" (Dkt. No. 1), a description in tension with the concept of a "deliberated killing." Similarly, plaintiffs allege that defendant "indiscriminately bombed" the hospital where Dr. Ayman Al-Harramah worked, not that the hospital was deliberately targeted. Cases outside the area of terrorist attacks are similarly unavailing.  In large measure, the other cases cited by plaintiffs deal with summary executions, or similar situations. For example, in the case of *Xuncax v. Gramajo*, plaintiffs "were forced to watch as their family members were tortured to death or summarily executed." 886 F.Supp. 162, 170 (D. Mass. 1995). Unlike extrajudicial killings, the indiscriminate bombing alleged by plaintiffs here is not the type of "deliberate" action contemplated by the statute. It is very difficult to reconcile the facts alleged in the complaint with the notion of "deliberated killing" as the term has been used in other cases analyzing the TVPA. Therefore, despite the undeniable and tragic suffering experienced by plaintiffs, the undersigned must recommend that the Court finds a lack subject matter jurisdiction to hear the claims in this matter.

## V.   Recommendation

For the foregoing reasons, the undersigned recommends that plaintiffs' motion for default judgment be denied.

## VI.   Notice

By means of the Court's electronic filing system, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and

Recommendation waives appellate review of the substance of this Report and Recommendation and

waives appellate review of a judgment based on this Report and Recommendation.


_____
                    /s/
                Michael S. Nachmanoff
                United States Magistrate Judge

April 23, 2020
Alexandria, Virginia