**THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **AIDA ELZAGALLY, ET AL.,** | ) | |
| | ) | **Civ. No. 1:19-cv-0853-LMB-MSN** |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | |
| **KHALIFA HIFTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GENERAL KHALIFA
HIFTER'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT</u>**

Duncan P. Levin, Esq.
Tucker Levin, PLLC
230 Park Avenue, Suite 440
New York, New York 10169
212-330-7626
dlevin@tuckerlevin.com
www.tuckerlevin.com

Edward J. Ungvarsky
VSB 83014
Ungvarsky Law, PLLC
114 North Alfred Street
Alexandria, VA 22314
571-207-9710
ed@ungvarskylaw.com
www.ungvarskylaw.com

# TABLE OF CONTENTS

**INTRODUCTION**................................................................................................................1

**STATEMENT OF UNDISPUTED FACTS**...................................................................2

**BACKGROUND** .................................................................................................................2

**STANDARDS OF REVIEW** ............................................................................................4

**ARGUMENT** .......................................................................................................................6

I.      PLAINTIFFS' ALLEGATIONS PRESENT A NON-JUSTICIABLE POLITICAL
        QUESTION...................................................................................................................6

II.     THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT BECAUSE
        GENERAL HIFTER IS ENTITLED TO HEAD OF STATE IMMUNITY. ....................9

III.    PLAINTIFFS' ALLEGATIONS DO NOT SHOW A CAUSE OF ACTION UNDER
        THE TVPA. ...............................................................................................................10

        A.      PLAINTIFFS HAVE NOT EXHAUSTED ALL ADEQUATE AND
                AVAILABLE REMEDIES IN LIBYA. ...............................................................10

        B.      THE KILLINGS ALLEGED BY PLAINTIFFS WERE NEITHER
                EXTRAJUDICIAL NOR DELIBERATE. ...........................................................12

IV.     PLAINTIFFS' CLAIMS UNDER THE ALIEN TORT CLAIMS ACT SHOULD BE
        DISMISSED BECAUSE THE ALLEGED CONDUCT DOES NOT TOUCH AND
        CONCERN THE UNTIED STATES. ...............................................................................14

V.      THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT FOR INSUFFICIENT
        SERVICE OF PROCESS. ...........................................................................................17

        A.      PLAINTIFFS' PURPORTED SERVICE OF PROCESS IS INVALID. ..............17

        B.      PLAINTIFFS' PURPORTED SERVICE BY PUBLICATION IS INVALID.....18

**CONCLUSION** ................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Bain*,
   697 F.2d 1213 (4th Cir. 1982) ........................................................................5

*Al Shimari v. Caci Premier Tech., Inc.*,
   758 F.3d 516 (4th Cir. 2014) ........................................................................ 16

*Amazon Web Servs. v. Global Equity Mgmt., S.A.*,
   2017 U.S. Dist. LEXIS 148477 (E.D. Va. 2017) ............................................ 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................5, 14

*Baker v. Carr*,
   369 U.S. 186 (1962) .........................................................................................7

*Bell Atl. Corp. v. Twombly*,
   50 U.S. 544 (2007) ...........................................................................................5

*Boykin v. Va. Dep't of Juvenile Justice*,
   No. 3:14CV811-HEH (E.D. Va. Aug. 20, 2015) .............................................5

*BP Products North America, Inc. v. Dagra*,
   236 F.R.D. 270 (E.D. Va. 2006) .................................................................... 19

*Corrie v. Caterpillar, Inc.*,
   403 F. Supp. 2d 1019 (W.D. Wash. 2005) .......................................................7

*Doe v. Exxon Mobil Corp.*,
   391 F. Supp. 3d 76 (D.D.C. 2019) ................................................................. 15

*EEOC v. Arabian Am. Oil Co.*,
   499 U.S. 244 (1991) ....................................................................................... 17

*Federal Deposit Ins. Corp. v. Schaffer*,
   731 F.2d 1134 (4th Cir. 1984) ....................................................................... 18

*First Am. Nat'l Bank v. Straight Creek Processing Co.*,
   756 F. Supp. 945 (E.D. Va. 1991) ...................................................................4

*Jean v. Dorélien*, 431 F.3d 776
   (11th Cir. 2005) .............................................................................................. 10

*Joe Hand Promotions, Inc. v. Citibars, Inc.*,
    2012 U.S. Dist. LEXIS 18500 (E.D. Va. 2012)..............................................18

*Kadic v. Karadzic*,
    70 F.3d 232, 238 (2d Cir. 1996)..............................................15

*Kaplan v. Cent. Bank of the Islamic Republic of Iran*,
    961 F. Supp. 2d 185 (D.D.C. 2013)..............................................16

*Kaplan v. Cent. Bank of the Islamic Republic of Iran*,
    896 F.3d 501 (D.C. Cir. 2018)..............................................15, 19

*Kiobel v. Royal Dutch Petroleum Co.*,
    569 U.S. 108 (2013)..............................................15

*Lafontant v. Aristide*,
    844 F. Supp. 128 (E.D.N.Y. 1994)..............................................9

*Malibu Media, LLC v. Bondoc*,
    No. 1:18-cv-052 (TSE/IDD) (E.D. Va. Nov. 14, 2018)..............................................18

*Mamani v. Berzain*,
    654 F.3d 1148 (11th Cir. 2011)..............................................12, 13, 14

*Md. State Fireman's Ass'n v. Chaves*,
    166 F.R.D. 353 (D. Md. 1996)..............................................18

*Microsoft Corp. v. AT & T Corp.*,
    550 U.S. 437 (2007)..............................................17

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010)..............................................17

*Mujica v. Airscan Inc.*,
    771 F.3d 580 (9th Cir. 2014)..............................................15, 17

*Mullane v. Cent Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)..............................................19

*Murphy Brothers, Inc. v. Michetti Pipe Stringing*,
    526 U.S. 344 (1999)..............................................17

*Mwani v. Bin Ladin*,
    Civil Action No. 99–125,
    2006 WL 3422208 (D.D.C. Sept. 28, 2006)..............................................15, 19

*Mwani v. Bin Laden*,
    947 F. Supp.2d 1 (D.D.C. May 29, 2013) ..................................................... 16

*Omni Capital Int'l, Ltd. v. Rudolf Wolff Co.*,
    484 U.S. 97 (1987) ......................................................................................... 17

*Reed v. Weeks Marine, Inc.*,
    166 F. Supp. 2d 1052 (E.D. Pa. 2001) ............................................................. 6

*Republican Party of N.C. v. Martin*,
    980 F.2d 943 (4th Cir. 1992) ........................................................................... 5

*Richmond, Fredericksburg Potomac R.R. Co. v. United States*,
    945 F.2d 765 (4th Cir. 1991) ........................................................................... 4

*Schneider v. Kissinger*,
    412 F.3d 190 (D.C. Cir. 2005) ..................................................................... 6, 8

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004) ....................................................................................... 15

*Underhill v. Hernandez*,
    168 U.S. 250 (1897) ......................................................................................... 6

*U.S. v. Noriega*,
    117 F.3d 1206 (11th Cir. 1997) ....................................................................... 9

*United States v. Sea Bay Development Corp*,
    Civil Action No. 2:06-cv-624 (E.D. Va. May 8, 2007) ................................... 6

*Xuncax v. Gramajo*,
    886 F. Supp. 162 (D. Mass. 1995) ........................................................... 11, 13

*Yousuf v. Samantar*,
    552 F.3d 371 (4th Cir. 2009) ........................................................................... 9

**FEDERAL STATUTES**

28 U.S.C. § 1350 note ...........................................................................*passim*

**FEDERAL RULES**

Fed. R. Civ. P. 4 ................................................................................. 17, 18, 19

Fed. R. Civ. P. 12 ...................................................................................... 5, 23

Fed. R. Civ. P. 56 ................................................................................................5

**OTHER MATERIALS**

H.R. Rep. No. 102-367, pt. 1 (1991) ...................................................................3

S. Rep. No. 102-249 (1991) ...........................................................................3, 12, 13

Al Arabiya, *Libyan National Army's Haftar claims 'mandate from the people,'*
    May 20, 2020, *available at* https://english.alarabiya.net/en/News/north-
    africa/2020/04/28/Libyan-National-Army-s-Haftar-claims-mandate-from-the-people- . . 10

Al Jazeera, *Trump praises Haftar in apparent reversal of US policy on Libya*,
    Apr. 20, 2019, *available at* https://www.aljazeera.com/news/2019/04/trump-calls-haftar-
    praises-significant-role-terrorism-fight-190419182035115.html ......................................9

Ayman al-Warfali, *Libya's eastern leader Haftar says army to take formal control*,
    Apr. 27, 2020, *available at* https://www.reuters.com/article/us-libya-security-
    idUSKCN2292RQ ................................................................................................ 10

Samer Al-Atrush, *Trump Backed Libyan Strongman's Attack on Tripoli, U.S. Officials Say*,
    April 24, 2019, *available at* https://www.bloomberg.com/news/articles/2019-04-
    24/trump-libya-haftar-tripoli .........................................................................7

Steve Holland, *White House says Trump spoke to Libyan commander Haftar on Monday*,
    Apr. 19, 2019, *available at* https://www.reuters.com/article/us-libya-security-
    trump/white-house-says-trump-spoke-to-libyan-commander-haftar-on-monday-
    idUSKCN1RV0WW ...........................................................................................8

United Nations, *Attacks on civilians, arbitrary arrests, top list of abuses in Libya: ICC
    prosecutor*, May 5, 2020, *available at*
    https://news.un.org/en/story/2020/05/1063282 ................................................. 12

U.S. Dep't of State, *U.S. Delegation Meets with General Khalifa Haftar*,
    Nov. 25, 2019, *available at*
    https://www.state.gov/u-s-delegation-meets-with-general-khalifa-haftar/ ........................7

## **INTRODUCTION**

The State of Libya remains in the throes of an internationalized civil conflict, with Defendant General Khalifa Hifter leading the Libyan National Army ("LNA") at the appointment of the House of Representatives, the unicameral parliament of Libya. This lawsuit describes horrific tragedies, including accusations of torture, that are alleged to have occurred during the course of this civil war. Plaintiffs' Complaint seeks to attribute responsibility for these incidents directly to Gen. Hifter. However, while recognizing the disturbing nature of the allegations in the Complaint, Gen. Hifter respectfully moves this Court to dismiss the claims, as he neither directed those actions, nor knew or should have known that they would occur.

This case presents the Court with a non-justiciable political question, as the Plaintiffs seek to hold Gen. Hifter liable even as the United States has engaged with him in seeking to bring peace to Libya. The incidents alleged in the Complaint furthermore occurred during a legitimate military mission in the course of Libya's civil war. Additionally, the Executive must be afforded due deference to recognize the leader of Libya, including to suggest immunity for heads of state.

Regardless, Plaintiffs' Complaint fails to allege facts that support a cause of action under either the Torture Victims Protection Act ("TVPA") or the Alien Tort Statute ("ATS"), also referred to as the Alien Tort Claims Act ("ATCA"). The TVPA provides relief in the United States to victims of extrajudicial killings and to victims of torture worldwide. Before such a claim can be raised before U.S. courts, however, the claimants must first show that they have exhausted their legal remedies in the country in which the alleged offense occurred. Plaintiffs also have not alleged any facts showing that Gen. Hifter is liable for their alleged claims of extrajudicial killings nor for their alleged claims of torture.

The Plaintiffs' theory of liability is not supported under the TVPA because the killings that Plaintiffs alleged occurred were not deliberate as required by the TVPA. Plaintiffs do not sufficiently allege any other facts supporting a cause of action under the TVPA. Moreover, the Plaintiffs' claims under the ATS also must fail because their claims do not touch and concern the United States with sufficient force to displace the presumption against extraterritorial application of the statute. The Plaintiffs' remaining Commonwealth of Virginia tort claims should be similarly dismissed as they do not implicate Virginia, and there are no valid federal claims in this matter.

Finally, a fundamental tenant of U.S. jurisprudence is that a court must have personal jurisdiction over the case in order to hear it. To have personal jurisdiction over Gen. Hifter, the Plaintiffs must have properly served them. They did not. The Plaintiffs purportedly served Gen. Hifter under Libyan Law, by entering the complaint in the North Tripoli First Instance Court, but this attempt at service did not in fact adequately apprise Gen. Hifter.

## STATEMENT OF UNDISPUTED FACTS

Gen. Hifter is a dual citizen of the United States and Libya. Gen. Hifter previously resided in Virginia, but he returned to Libya years ago and has resided there since. There currently is an ongoing civil war in Libya in which one of the factions, the LNA, is commanded by Gen. Hifter. Complaint, ECF No. 1.

## BACKGROUND

Gen. Hifter is a dual United States and Libyan citizen and is the commander of the LNA. The elected Libyan House of Representatives appointed him this position on March 2, 2015. Libya is currently in a state of civil war with two major factions contesting rule of the country: the Libyan House of Representatives and LNA, and the Government of National Accord ("GNA"). The LNA is based in Tobruk, and the GNA is based in Tripoli.

In 2011, Gen. Hifter returned to Libya from the United States to support the Libyan Revolution. In February of 2014, Libya broke into a second civil war where Gen. Hifter led what is known as Operation Dignity. Currently, Libya remains embroiled in that civil war with the future outcome uncertain. Plaintiffs' allegations are raised in this context and pursuant to ATS and the TVPA.

The TVPA establishes a cause of action for torture and extrajudicial killing when such acts are committed by an individual acting under actual or apparent authority or color of law of any foreign nation. 28 U.S.C. § 1350 note. The statute was enacted in 1991, and as its legislative history illustrates, the TVPA was intended to carry out obligations of the United States under the United Nations Charter and other international agreements pertaining to the protection of human rights, such as the Geneva Conventions of 1949. *See* H.R. REP. NO. 102-367, pt. 1, at 4–5 (1991). Consistent with the Geneva Conventions, only killings that violated international law were to be considered "actionable under the TVPA." S. REP. NO. 102-249, at 5 (1991). Accordingly, the definition of "extrajudicial killing" excludes "killings that are lawful under international law— such as killings by armed forces during declared wars which do not violate the Geneva Convention and killings necessary to effect a lawful arrest or prevent the escape of a person lawfully detained." *Id*.

Under the TVPA, an extrajudicial killing is a "deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all judicial guarantees which are recognized as indispensable by civilized people." 28 U.S.C. § 1350 note. Significantly, the term "does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation." *Id*.

Additionally, torture is defined as "any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind." *Id*. Before filing a claim under the TVPA, the individual must exhaust all adequate and available remedies in the place in which the conduct occurred. *Id*.

The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Notably, the ATS is merely jurisdictional and does not provide a potential claimant with an independent cause of action. Courts only apply the ATS extraterritorially if a plaintiff's claims touch and concern the United States with sufficient force to displace the presumption against exterritoriality.

## **STANDARDS OF REVIEW**

### I.   **RULE 12(b)(1).**

It is well established that a federal district court must have subject matter jurisdiction over a case to hear it and award relief. *First Am. Nat'l Bank v. Straight Creek Processing Co*., 756 F. Supp. 945, 946 (E.D. Va. 1991). On a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, if a defendant challenges the basis for jurisdiction, the plaintiff has the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Furthermore, if a "defendant contends that the complaint

fails to allege facts upon which subject matter jurisdiction can be based, all facts in the complaint are presumed true." *Boykin v. Va. Dep't of Juvenile Justice*, No. 3:14CV811-HEH, *6 (E.D. Va. Aug. 20, 2015) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

## II.   RULE 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Boykin v. Va. Dep't of Juvenile Justice*, at *7 (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). The complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal citations omitted).  A plaintiff's factual allegations must "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint "that offers labels and conclusions" and "naked assertions devoid of further factual enhancement" does not suffice. *Iqbal*, 556 U.S. at 678 (internal citations omitted).  Rather, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id*. (internal quotation marks omitted).

Rule 12(d) authorizes the court to treat a Rule 12(b)(6) motion as a motion for summary judgment under Rule 56 where the defendants rely on matters outside the pleadings, provided that all parties have a reasonable opportunity to present all material pertinent to the motion. Fed. R. Civ. P. 12(d). Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III.     **RULE 12(b)(5).**

Finally, a motion to dismiss under Rule 12(b)(5) provides for "the dismissal of an action for insufficient service of process." *United States v. Sea Bay Development Corp*, Civil Action No. 2:06-cv-624, *3 (E.D. Va. May 8, 2007).  Moreover, "[i]n resolving a motion under Rule 12(b)(5), the party making the service has the burden of demonstrating its validity when an objection to service is made." *Id*. at *7 (citing *Reed v. Weeks Marine, Inc*., 166 F. Supp. 2d 1052, 1054 (E.D. Pa. 2001)).

<u>**ARGUMENT**</u>

I.     **PLAINTIFFS' ALLEGATIONS PRESENT A NON-JUSTICIABLE POLITICAL QUESTION.**

For over a century, the Supreme Court has recognized that legitimate acts of civil war are outside the purview of the courts. "Where a civil war prevails . . . generally speaking foreign nations do not assume to judge of the merits of the quarrel." *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897). Furthermore, "If the political revolt fails of success, still if actual war has been waged, acts of legitimate warfare cannot be made the basis of individual liability." *Id*.

The Supreme Court in *Baker v. Carr* explained six factors that must be considered when determining whether a civil action presents a non-justiciable political question: "[1] textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment of multifarious pronouncements by various departments on one question." *Schneider v. Kissinger*,

412 F.3d 190, 193 (D.C. Cir. 2005) (citing *Baker v. Carr*, 369 U.S. 186, 217 (1962)). Only one of these factors must be present to prevent a court from exercising jurisdiction over the case. *Schneider v. Kissinger*, 412 F.3d at 193.

Here, the allegations of Plaintiffs' Complaint with respect to Gen. Hifter present the Court with a non-justiciable political question. Political questions, including those presented in this case, are barred from adjudication when they "challenge[] the official acts of an existing government in a region where diplomacy is delicate and U.S. interests are great." *Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1032 (W.D. Wash. 2005). Moving forward with this case will inherently impede the respect due to the political branches of government in the conduct of foreign affairs because Plaintiffs intend to hold liable a party with whom the United States has directly engaged in seeking to bring peace to Libya. Further, the incidents for which Plaintiffs seek to hold Gen. Hifter liable occurred during a legitimate military mission in the course of Libya's civil war. Plaintiffs inherently are asking the Court to judge the conduct of the LNA in carrying out military operations in an ongoing civil war. Moreover, this lawsuit inherently jeopardizes the ability of the Executive branch to engage in good faith negotiations with the leaders of Libya and other countries across the world with respect to the conflict.

Although not every politically charged matter presents a political question, the circumstances surrounding this case are completely within the Executive's domain. The Administration has been actively engaged with respect to the current situation in Libya and has even shown certain support for Gen. Hifter. *See e.g.*, U.S. Dep't of State, *U.S. Delegation Meets with General Khalifa Haftar*, Nov. 25, 2019, *available at* https://www.state.gov/u-s-delegation-meets-with-general-khalifa-haftar/ (explaining that senior U.S. officials met with General Hifter to discuss bringing an end to the Libyan conflict); Samer Al-Atrush, *Trump Backed Libyan*

*Strongman's Attack on Tripoli, U.S. Officials Say*, April 24, 2019, *available at* https://www.bloomberg.com/news/articles/2019-04-24/trump-libya-haftar-tripoli (reporting that President Trump supported Gen. Hifter's offensive into the capital of Libya, Tripoli). Although the United States' foreign policy and national security objectives are dynamic, what is clear is that Executive branch discussions with world leaders concerning Libya's civil war should not be affected or constrained by matters before the courts.

Allowing this case to proceed could seriously jeopardize any current or future negotiations that the Administration might engage in with Gen. Hifter and the Libyan Government to achieve the United States' foreign policy goals. *See e.g.*, Steve Holland, *White House says Trump spoke to Libyan commander Haftar on Monday*, Apr. 19, 2019, *available at* https://www.reuters.com/article/us-libya-security-trump/white-house-says-trump-spoke-to-libyan-commander-haftar-on-monday-idUSKCN1RV0WW (noting that the United States needs Gen. Hifter's "support in building democratic stability there in the region"). Regardless of the substance of those foreign policy goals, it is the political branches' domain to determine whether to support Gen. Hifter's actions in Libya. *Schneider v. Kissinger*, 412 F.3d at 197 (explaining that "whether drastic measures should be taken in matters of foreign policy and national security is not the stuff of adjudication, but of policymaking"). Plaintiffs' allegations of extrajudicial killings and torture under the TVPA essentially require a U.S. court to adjudicate the conduct of the armed forces of a foreign government that is actively working with the United States to try to bring peace to the region. Accordingly, allowing this case to proceed could complicate and jeopardize U.S. foreign policy and relations with Libya regardless of Gen. Hifter's role in the country, as well as constrain the actions of the U.S. administration that will hold office in January 2021.

## II. THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT BECAUSE GENERAL HIFTER IS ENTITLED TO HEAD OF STATE IMMUNITY.

While the Foreign Sovereign Immunities Act does not apply to individual actors in this Circuit, *Yousuf v. Samantar*, 552 F.3d 371, 381 (4th Cir. 2009), courts generally seek the guidance of the Executive branch in cases such as this one that involve significant political officials. *See e.g.*, *U.S. v. Noriega*, 117 F.3d 1206, 1212 (11th Cir. 1997) (explaining that "where the Executive Brach either expressly grants or denies a request to suggest immunity, courts must follow that direction"). Furthermore, because "determination[s] of who qualifies as a head-of-state is made by the Executive Branch, it is not a factual issue to be determined by the courts. No judicial hearing or factual determination aside from receipt of the State Department's communication is warranted." *Lafontant v. Aristide*, 844 F. Supp. 128, 132 (E.D.N.Y. 1994). Common law head-of-state immunity is like the foreign state sovereign immunity, and applies to leaders of foreign countries to preclude a court from exercising personal jurisdiction over foreign states' rulers. *Id*. In *Lafontant*, the court explained that "head-of-state immunity is required to safeguard mutual respect among nations." *Id*.

"The Constitution assigns the power to 'receive Ambassadors and other public Ministers' to the Executive Branch, U.S. Const. art. II, § 3, which includes, by implication, the power to accredit diplomats and recognize foreign heads of state." *Yousuf v. Samantar*, 699 F.3d 763, 772 (4th Cir. 2012). Further, the "Courts have generally treated executive "suggestions of immunity" for heads of state as a function of the Executive's constitutional power and, therefore, as controlling on the judiciary." *Id*. Here, during the course of the Libyan conflict, President Trump has recognized Gen. Hifter's legitimate role on behalf of the State of Libya. In a phone call to Gen. Hifter, President Trump reportedly "recognised Field Marshal Haftar's significant role in fighting terrorism and securing Libya's oil resources, and the two discussed a shared vision for Libya's

transition to a stable, democratic political system." Al Jazeera, *Trump praises Haftar in apparent reversal of US policy on Libya*, Apr. 20, 2019, *available at* https://www.aljazeera.com/news/2019/04/trump-calls-haftar-praises-significant-role-terrorism-fight-190419182035115.html. In light of the deference that must be afforded to the President to recognize the leader of Libya, the Court should dismiss this action because it cannot exercise personal jurisdiction over Gen. Hifter to the extent he holds head-of-state immunity. *See e.g.*, Ayman al-Warfali, *Libya's eastern leader Haftar says army to take formal control*, Apr. 27, 2020, *available at* https://www.reuters.com/article/us-libya-security-idUSKCN2292RQ (reporting on Gen. Hifter's acceptance of a popular mandate to rule Libya); Al Arabiya, *Libyan National Army's Haftar claims 'mandate from the people,'* May 20, 2020, *available at* https://english.alarabiya.net/en/News/north-africa/2020/04/28/Libyan-National-Army-s-Haftar-claims-mandate-from-the-people- (same).

## III.   PLAINTIFFS' ALLEGATIONS DO NOT SHOW A CAUSE OF ACTION UNDER THE TVPA.

### A.   PLAINTIFFS HAVE NOT EXHAUSTED ALL ADEQUATE AND AVAILABLE REMEDIES IN LIBYA.

Before a claim may be filed under the TVPA, potential claimants must exhaust all of their adequate and available remedies in the place in which the alleged conduct occurred. 28 U.S.C. 1350 note. The TVPA's exhaustion requirement is an affirmative defense for which the defendant initially bears the burden of proof. *Jean v. Dorélien*, 431 F.3d 776, 781 (11th Cir. 2005) (citations omitted). However, "[o]nce the defendant makes a showing of remedies abroad which have not been exhausted, the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id*. at 782.

Courts have found that a plaintiff has exhausted adequate and available remedies when he or she has sought relief by initiating a judicial proceeding in the country in which the conduct occurred. *See e.g.*, *Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass. 1995). In *Xuncax*, the court found that the plaintiff did exhaust those remedies because she stated in an affidavit that she returned to the country in which the conduct occurred in order to provide testimony before the courts of that country. *Id.* at 178. Furthermore, and notwithstanding that testimony, the case had not made progress for many years, and "under Guatemalan law, a civil action cannot be brought until final judgment has been rendered in the criminal proceedings." *Id*. In consideration of those factors, the *Xuncax* court was satisfied that the plaintiff had exhausted all of her adequate and available remedies.

Here, the Plaintiffs have not alleged facts showing that they have exhausted their available remedies. The Plaintiffs' Complaint does not explain how they are unable to get relief in Libya, nor do the Plaintiffs detail any attempts to seek relief in Libya, as the plaintiff in *Xuncax* did.

Additionally, the Plaintiffs attempted to serve Gen. Hifter in the North Tripoli First Instance Court. Plaintiffs allege that under Libyan Law, a person is served by submitting a complaint to the appropriate court in Libya, and that they served Gen. Hifter this way. Plaintiffs, however, do not explain why they cannot seek relief in those courts in Libya if they can submit this pending complaint in the very same Libyan courts in order to purportedly effectuate service on Gen. Hifter. The North Tripoli First Instance Court cannot simultaneously be functional enough to effectuate service on Gen. Hifter, but then unavailable as an avenue to seek relief for the Plaintiffs' claims. If the Plaintiffs' attempts to effectuate service through the Libyan courts is deemed valid by this Court, the Plaintiffs must first seek relief through those very same courts in Libya before seeking relief from this or any U.S. Court pursuant to the TVPA.

11

Moreover, the International Criminal Court ("ICC") is currently engaged in an ongoing investigation regarding the circumstances of the war in Libya. United Nations, *Attacks on civilians, arbitrary arrests, top list of abuses in Libya: ICC prosecutor*, May 5, 2020, *available at* https://news.un.org/en/story/2020/05/1063282. This investigation under the auspices of the United Nations and the ICC covers alleged incidents such as those raised in the matter at hand, and is best situated to pursue relevant fact-finding and assess any allegations concerning the conduct of the Libyan conflict.

Because alternative avenues for relief continue to exist for the Plaintiffs, they have failed to show that they have exhausted all of their available remedies as required under the TVPA.

**B.    THE KILLINGS ALLEGED BY PLAINTIFFS WERE NEITHER EXTRAJUDICIAL NOR DELIBERATE.**

The TVPA authorizes claims against individuals who, under actual or apparent authority, or color of law, of any foreign nation subjects an individual to torture or to extrajudicial killing. 28 U.S.C. § 1350 note. Under the TVPA, an extrajudicial killing is a "deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all judicial guarantees which are recognized as indispensable by civilized people." *Id*. Significantly, the term "does not include any such killing that, under international law, is law-fully carried out under the authority of a foreign nation." *Id*.

The allegations detailed in the Plaintiffs' Complaint instead appear to be the result of lawfully carried out military operations which, as head of the LNA, Gen. Hifter is authorized to carry out for the State of Libya. The TVPA is not intended to create liability for collateral civilian casualties resulting from legitimate military operations undertaken in a civil war. *See* S. REP. NO. 102-249, at 5 (1991). Furthermore, the causalities experienced in a civil war are not equivalent to extrajudicial killings where persons are killed without having been tried and convicted for the

crimes they allegedly committed. Here, the casualties alleged in the Plaintiffs' Complaint are not extrajudicial killings because they occurred during lawfully carried out military operations in the course of Libya's civil war. *See id.*

Even where a killing is found to be extrajudicial, the TVPA additionally requires that such a killing be deliberate. Courts have stressed that killings are only "deliberated" when they are "undertaken with studied consideration and purpose," and not "accidental or negligent." *Mamani v. Berzain*, 654 F.3d 1148, 1155 (11th Cir. 2011). In *Mamani*, the court found that "alternative explanations (other than extrajudicial killing) for the pertinent seven deaths easily come to mind; for instance, the alleged deaths are compatible with accidental or negligent shooting (including mistakenly identifying a target as a person who did pose a threat to others), individual motivations (personal reasons) not linked to defendants, and so on." *Id.*

Here, again, Plaintiffs fail to show a critical element of the TVPA; they cannot show that any alleged killings were undertaken with studied consideration and purpose. The events alleged throughout the complaint were not the result of a studied purpose by Gen. Hifter because, as reported heavily by the media, Libya is in a state of ongoing civil war. If such events occurred, they were carried out by individuals acting on their own accord in the course of legitimate military operations, and not under any orders of Gen. Hifter.

The Plaintiffs allege that on April 4, 2019, Gen. Hifter's forces were "randomly shelling" the area in which Msaddek Tunalli was located. Complaint, ECF. No. 1, Page 5. Plaintiffs further allege that this "indiscriminate shelling" was the cause of Msaddek Tunalli's death. *Id.* Additionally, with respect to Mufida Sasi Abu Gasiah, the Plaintiffs similarly allege that she was killed during a military offensive in Tripoli. *Id.* at 6. Finally, the Plaintiffs allege that Gen. Hifter's

forces "indiscriminately" bombed another area on April 6, 2019 which led to the death of Dr. Ayman Al-Harrahmah. *Id*. at 7.

The deaths that Plaintiffs alleged occurred did not occur with the studied consideration and purpose that is required for an extrajudicial killing to be deliberate under the TVPA. There are many possible alternative explanations for these alleged deaths, starting with the fact that they all occurred during an ongoing civil war in Libya. In *Mamani*, the court explained that "even reading the well-pleaded allegations of fact in the Complaint in plaintiffs' favor, each of the plaintiffs' decedents' deaths could plausibly have been the result of precipitate shootings during an ongoing civil uprising." *Mamani v. Berzain*, 654 F.3d at 1155.  The same is true here.

Plaintiffs likewise do not allege any facts showing how these events were deliberate under the TVPA. The Complaint does not connect any decisions by Gen. Hifter as commander of the LNA with the offenses alleged to have occurred during military operations. Simply put, the alleged offenses, while horrific in nature, did not occur according to Gen. Hifter's plan or at his direction. The court in *Mamani* explained, such broad accusations are "easy to say about leaders of nations, but without adequate factual support of more specific acts by *these* defendants, these 'bare assertions' are 'not entitled to be assumed true.'" *Mamani v. Berzain*, 654 F.3d 1148, 1154 (11th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). Because the Plaintiffs cannot show that the alleged deaths were extrajudicial or deliberate, they cannot satisfy critical elements of the TVPA.

IV.   **PLAINTIFFS' CLAIMS UNDER THE ALIEN TORT CLAIMS ACT SHOULD BE DISMISSED BECAUSE THE ALLEGED CONDUCT DOES NOT TOUCH AND CONCERN THE UNITED STATES.**

The ATS, sometimes referred to as the ATCA, provides: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the

law of nations or a treaty of the United States." 28 U.S.C. § 1350.  Critically, the ATS is merely a jurisdictional grant and does not provide a statutory cause of action or explain the definition of a cause of action for violations of international law. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 713–14 (2004). To establish jurisdiction under the ATS, a plaintiff must allege facts "sufficient to establish that: (1) they are aliens; (2) they are suing for a tort; and (3) the tort in question has been committed in violation of the law of nations or a treaty of the United States." *Mwani v. Bin Ladin,* Civil Action No. 99–125, 2006 WL 3422208, at *2 (D.D.C. Sept. 28, 2006) (citing *Kadic v. Karadzic,* 70 F.3d 232, 238 (2d Cir. 1996) (holding that the district court had subject matter jurisdiction pursuant to the ATCA over tort claims brought by citizens of Bosnia-Herzegovina for torts committed, *inter alia*, in connection with genocide).

In *Kiobel,* the Supreme Court barred any extraterritorial application of the ATS unless the claims "touch and concern" the territory of the United States with sufficient force to displace the presumption against extraterritoriality. *Kiobel v. Royal Dutch Petroleum Co*., 569 U.S. 108, 124-25 (2013); *Doe v. Exxon Mobil Corp*., 391 F. Supp. 3d 76, 82 (D.D.C. 2019); *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 514 (D.C. Cir. 2018). The "claims," rather than the alleged tortious conduct, must touch and concern United States territory with sufficient force. *Al Shimari v. Caci Premier Tech., Inc*., 758 F.3d 516, 527 (4th Cir. 2014). Notably, a party's U.S. citizenship alone is not sufficient to satisfy the "touch and concern" test. *Mujica v. Airscan Inc*., 771 F.3d 580, 594 (9th Cir. 2014).

The Court in *Kaplan* held that the plaintiff's ATS claims failed because the claim did not touch and concern the United States. *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 961 F. Supp. 2d 185 (D.D.C. 2013). The court explained that the alleged attacks in question were funded by Iran, launched from Lebanon, and targeted at Israel. *Id*. at 205. The court contrasted the case

with *Mwani v. Bin Laden*, 947 F.Supp.2d 1, 4 (D.D.C. May 29, 2013) where the attack was "planned in the United States and targeted at one of its embassies" and concluded that, unlike *Mwani,* the plaintiffs' claims did not do not "touch and concern the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application [of the ATS]." *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 961 F. Supp. 2d at 205.

Unlike *Kaplan*, however, the court in *Al Shimari* held that the plaintiffs' ATS claims "touch and concern" the United States because of defendant CACI International, Inc.'s connections to the United States. *Al Shimari v. Caci Premier Tech., Inc*., 758 F.3d 516, 528 (4th Cir. 2014). Specifically, the court explained that the plaintiff's ATS claims pass *Kiobel*'s touch and concern test based on: "(1) CACI's status as a United States corporation; (2) the United States citizenship of CACI's employees, upon whose conduct the ATS claims are based; (3) the facts in the record showing that CACI's contract to perform interrogation services in Iraq was issued in the United States by the United States Department of the Interior, and that the contract required CACI's employees to obtain security clearances from the United States Department of Defense; (4) the allegations that CACI's managers in the United States gave tacit approval to the acts of torture committed by CACI employees at the Abu Ghraib prison, attempted to "cover up" the misconduct, and "implicitly, if not expressly, encouraged" it; and (5) the expressed intent of Congress, through enactment of the TVPA and 18 U.S.C. § 2340A, to provide aliens access to United States courts and to hold citizens of the United States accountable for acts of torture committed abroad." *Id*. at 530-31.

In this case, the Plaintiffs' claims do not touch and concern the United States with sufficient force to displace the presumption against extraterritoriality because all of the alleged conduct occurred in Libya. Furthermore, all of the Plaintiffs are residents of Libya. The only connection

this case has to the United States is that Gen. Hifter is a U.S. citizen, but, as the court explained in *Mujica v. Airscan Inc.*, the Supreme Court has never suggested that U.S. citizenship alone is enough to apply a statute extraterritorially. *Mujica v. Airscan Inc.*, 771 F.3d at 594 (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 250-51, 269 (2010) (holding that Section 10(b) did not reach claims of securities fraud against "foreign and American defendants" based on largely extraterritorial conduct); *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 455 (2007) (holding that presumption against extraterritoriality barred patent infringement case brought against U.S. corporation but based on conduct abroad); *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 258–59 (1991) (holding that Title VII did not apply to U.S. citizens employed by U.S. employers overseas). Given that none of the conduct alleged in the Complaint occurred in the United States, and the only connection to the United States is Gen. Hifter's citizenship, the Plaintiffs' ATS claims should be dismissed as it is merely a jurisdictional grant and the claims do not touch and concern the United States.

Furthermore, the Plaintiffs' remaining Commonwealth of Virginia tort claims should be dismissed as they do not implicate Virginia, and there are no valid federal claims in this matter.

## V.  THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT FOR INSUFFICIENT SERVICE OF PROCESS.

### A.  PLAINTIFFS' PURPORTED SERVICE OF PROCESS IS INVALID.

Absent valid "service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Brothers, Inc. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff Co.*, 484 U.S. 97, 104 (1987) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Rule 4(e)-(j) of the Federal Rules of Civil Procedure provide the different ways in which a party can serve another

17

party. Rule 4(f)(2)(A) permits service "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Fed. R. Civ. P. 4(f)(2)(A). The Plaintiffs allege that service is proper in Libya upon the filing of the complaint in the appropriate Libyan Court. Affidavit of Service, ECF No. 8. Accordingly, the Plaintiffs further allege that service upon Gen. Hifter in this matter is proper upon their filing the complaint in the North Tripoli First Instance Court. *Id.*

As a consequence of improper service, "a court is without jurisdiction to render a personal judgment against a defendant." *Malibu Media, LLC v. Bondoc,* No. 1:18-cv-052, *4 (TSE/IDD) (E.D. Va. Nov. 14, 2018) (quoting *Joe Hand Promotions, Inc. v. Citibars, Inc*., 2012 U.S. Dist. LEXIS 18500, at *4 (E.D. Va. 2012) (quoting *Federal Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1135 (4th Cir. 1984)); *see also Md. State Fireman's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996) ("It is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or a default judgment may be entered against a defendant.")

Here, the Plaintiffs' attempts at serving Gen. Hifter through the Libyan Courts similarly did not in fact apprise him of the pending lawsuit. The Plaintiffs allegedly effectuated service on Gen. Hifter under Libyan law by filing the documents in the North Tripoli First Instance Court. However, as the GNA controls Tripoli, it is not clear how Gen. Hifter would become aware that this lawsuit has been filed with the North Tripoli First Instance Court. Further, given the current state of civil war in Libya, and the fact that Gen. Hifter's opposition controls Tripoli, it is also not clear how Gen. Hifter would have access to the courts there. Accordingly, this method of purported service does not put Gen. Hifter on notice that the Plaintiffs filed the pending lawsuit.

**B.      PLAINTIFFS' PURPORTED SERVICE BY PUBLICATION IS INVALID.**

In addition to Plaintiffs' alleged use of Libyan law to effectuate service on Gen. Hifter, Plaintiffs' purported use of service by publication is also invalid. Although federal courts recognize the validity of service by publication, the plaintiff requesting this method of service can do so only with the court's permission. Fed. R. Civ. P. 4(f)(3); *See e.g.*, *BP Products North America, Inc. v. Dagra*, 236 F.R.D. 270, 272 (E.D. Va. 2006) (granting plaintiff's request to serve by publication upon a showing that a proposed publication would be likely to reach the defendant).

In this case, it is unclear from the Plaintiffs' Affidavit of Service whether they attempted to serve by publication; nevertheless, if they did, the Plaintiffs' attempts at service by publication are nonetheless invalid as the Court did not approve that method of service. Furthermore, the Plaintiffs have not shown that the selected publications are ones that are likely to reach Gen. Hifter. Simply put, the Plaintiffs' attempts at serving Gen. Hifter have not apprised him that the pending lawsuit exists.

Service of process satisfies due process when it provides "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Amazon Web Servs. v. Global Equity Mgmt., S.A.*, 2017 U.S. Dist. LEXIS 148477, at *9 (E.D. Va. 2017) (citing to *Mullane v. Cent Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Here, considering the Plaintiffs' alleged facts, Gen. Hifter's current status, and open source reporting regarding Gen. Hifter's involvement in Libya, the Plaintiffs' attempted service did not adequately notify Gen. Hifter of the pending lawsuit.  The Plaintiffs' Complaint, therefore, should be dismissed due to insufficient service of process under Rule 12(b)(5).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Gen. Hifter respectfully requests that this Court

grant his Motion to Dismiss or, in the alternative, for Summary Judgment.


Dated:  August 20, 2020                                          Respectfully submitted,


Duncan P. Levin, Esq.
Tucker Levin, PLLC
230 Park Avenue, Suite 440
New York, New York 10169
212-330-7626
dlevin@tuckerlevin.com
www.tuckerlevin.com
*Counsel for Defendant*


Edward J. Ungvarsky
VSB 83014
Ungvarsky Law, PLLC
114 North Alfred Street
Alexandria, VA 22314
571-207-9710
ed@ungvarskylaw.com
www.ungvarskylaw.com
*Local Counsel for Defendant*