IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| AIDA ELZAGALLY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19cv0853 (LMB/JFA) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| MUNA AL-SUYID, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20cv0170 (LMB/JFA) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ALI ABDALLA HAMZA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20cv1038 (LMB/JFA) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |

**PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

This matter is before the court on plaintiffs' motions for default judgment against defendant Khalifa Hifter ("Hifter" or "defendant") in three consolidated cases. Because plaintiffs' motions seek relief that would be dispositive of the claims in their complaints, they are being considered in accordance with 28 U.S.C. § 636(b)(1)(B). Pursuant to 28 U.S.C.

1

§ 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

## Factual Background

Plaintiffs are citizens and/or residents of Libya, and they allege claims against defendant pursuant to the Torture Victim Protection Act ("TVPA"). Plaintiffs allege that defendant used his leadership role with the Libyan National Army ("LNA") to authorize indiscriminate bombing and torture of Libyan civilians, including several of plaintiffs' family members.

### i. *Elzagally Plaintiffs*

On July 9, 2021, plaintiffs Aida Elzagally, Ayah Tunalli, Alaa Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Muhammad Tunalli, Abduladeem Tunalli, Mais Ahmed Mayouf, and Abdulhameed Al-Harramah (collectively "Elzagally plaintiffs") filed an amended complaint ("Am. Compl.") (Docket no. 69) alleging claims against defendant pursuant to the TVPA.[1] (Am. Compl. ¶¶ 64–68). The Elzagally plaintiffs allege that defendant—a U.S. Citizen—left his home in Virginia in 2015 and moved to Libya to form the LNA. (Am. Compl. ¶¶ 1, 17–18, 22–25). As "Field Marshall" of the LNA, defendant allegedly authorized the indiscriminate bombing and torture of Libyan citizens. (Am. Compl. ¶¶ 1–2, 28–32). The Elzagally plaintiffs allege that their relative, Msaddek Tunalli, was killed on April 14, 2019 when he was struck by a mortar fired while defendant's forces were randomly shelling the area. (Am. Compl. ¶¶ 33–44). They further allege that defendant and his forces launched missiles into plaintiff Mais Ahmed Mayouf's neighborhood on April 16, 2019, killing her mother, Mufida Sasi Abu Gasiah, her grandmother, and her aunt, and leaving Mais as the only survivor. (Am. Compl. ¶¶ 14, 45–53).

---

[1] The Elzagally plaintiffs filed their original complaint on June 26, 2019 alleging several additional claims against defendant. (Docket no. 1). The Elzagally plaintiffs' non-TVPA claims were dismissed on September 29, 2020. (Docket no. 43).

2

Lastly, the Elzagally plaintiffs allege that plaintiff Abdulhameed Al-Harramah's son, Dr. Ayman Al-Harramah, was killed on April 6, 2019 when defendant bombed the hospital in which Dr. Al-Harramah was working. (Am. Compl ¶¶ 54–59).

### ii. *al-Suyid Plaintiffs*

On February 18, 2020, plaintiffs Muna al-Suyid, Abdalla al-Krshiny, Ahmad al-Krshiny, Mahmud al-Krshiny, and Ibrahim al-Krshiny (collectively "al-Suyid plaintiffs") filed a complaint ("Compl.") (Docket no. 1) alleging claims against defendant pursuant to the TVPA.[2] (Compl. ¶¶ 55–71). The al-Suyid plaintiffs allege that their family members were tortured and killed in Benghazi by LNA officials acting under defendant's command as part of a military program called "Operation Dignity." (Compl. ¶¶ 26–46). On October 15, 2014, LNA soldiers acting under defendant's command allegedly fired on plaintiff Muna al-Suyid's home and killed her brothers, Mustafa al-Suyid and Khalid al-Suyid. (Compl. ¶¶ 29–31). The al-Suyid plaintiffs also allege that the soldiers kidnapped, tortured, and killed Muna's father, Abdel Salam al-Suyid, and brother, Ibrahim al-Suyid. (Compl. ¶¶ 30–33). On October 17, 2014, LNA soldiers, again acting under defendant's command, allegedly fired on the al-Krshiny family home, killing two family members and taking plaintiff Ibrahim al-Krshiny and his five surviving brothers as prisoners. (Compl. ¶¶ 34–36). While held captive, Ibrahim and his brother, Mustafa, were allegedly tortured, and Mustafa's body was recovered on November 5, 2014 with bullet wounds to his head and chest. (Compl. ¶¶ 37–44). LNA soldiers also allegedly opened fire on a truck containing LNA prisoners, injuring plaintiffs Abdalla al-Krshiny, Ahmad al-Krshiny, and Mahmud al-Krshiny, and killing their brother, Ali. (Compl. ¶ 45).

---

[2] The al-Suyid plaintiffs' complaint alleged several additional claims against defendant and his sons, Khalid Hifter and Saddam Hifter. (Docket no. 1). All claims except for the TVPA claims against defendant were dismissed on September 29, 2020. (Docket no. 52).

3

### iii. *Hamza Plaintiffs*

On September 17, 2020, plaintiffs Ali Abdalla Hamza, Nehma Abdalla Al-Mahdi Hamza, Abdelhalim Abdalla Mahdi Hamza, and Salimah Abdullah Abraheem Jibreel (collectively "Hamza plaintiffs") filed an amended complaint ("Am. Compl.") (Docket no. 8) alleging claims against defendant pursuant to the TVPA.[3] (Am. Compl. ¶¶ 199–211). Like the al-Suyid plaintiffs, the Hamza plaintiffs allege that their family members were tortured and killed by LNA soldiers as part of Operation Dignity. (Am. Compl. ¶¶ 112–162). On February 26 and 28, 2017, LNA soldiers operating under defendant's command allegedly fired tank shells into a home in which members of the Hamza family were sheltering, killing plaintiff Ali Abdalla Hamza's brother, Ibrahim Abdalla Hamza, and his sister, Fariha Abdalla Hamza. (Am. Compl. ¶¶ 10, 139–40). The Hamza plaintiffs also allege that LNA soldiers fired machine guns and heavy artillery into several cars containing civilians attempting to flee the city, killing Ali's mother, Aalya Faleh Al-Derbali, his brother, Mahmoud "Naser" Abdalla Hamza, and his sister, Faiza Abdalla Hamza. (Am. Compl. ¶¶ 10, 144). Ali's sister, Abtisam, survived the attack with a gunshot wound to her shin, but she was allegedly taken prisoner and tortured by LNA interrogators. (Am. Compl. ¶¶ 145–46). The Hamza plaintiffs also allege that LNA forces bombed plaintiff Salimah Jibreel's house on January 5, 2017, killing three of her children: Aziza, Maryam, and Mohammad. (Am. Compl. ¶ 159). Salimah, her husband, and one of her children escaped with injuries, but her husband was allegedly captured by LNA forces, tortured, and kept in detention, where he currently remains. (Am. Compl. ¶¶ 159, 161–62).

---

[3] The Hamza plaintiffs' amended complaint alleged several additional claims under the Alien Tort Statute, all of which were dismissed on March 26, 2021. (Docket no. 33).

4

## **Procedural Background**

    *i.*    *Elzagally Action (1:19-cv-0853-LMB-JFA)*

The Elzagally plaintiffs filed the original complaint in this action on June 26, 2019. (Docket no. 1). On December 4, 2019, the Elzagally plaintiffs filed an affidavit certifying that defendant was served with the complaint and summons pursuant to Libyan law on November 25, 2019. (Docket no. 8). Defendant failed to file a responsive pleading, and the Clerk's Office entered a default as to defendant on January 9, 2020. (Docket no. 12). The Elzagally plaintiffs filed a motion for default judgment on January 31, 2020 (Docket no. 18), and the court filed a Report and Recommendation on April 23, 2020 recommending that the Elzagally plaintiffs' motion be denied (Docket no. 25). Counsel entered an appearance on behalf of defendant on July 31, 2020 (Docket no. 27), and the Clerk's Entry of Default was set aside on August 6, 2020 (Docket no. 29). Defendant filed a motion to dismiss (Docket no. 32), which the District Judge granted in part on September 29, 2020 (Docket no. 43).

In early 2021, defendant's counsel requested leave to withdraw, which the District Judge granted on January 12, 2021 (Docket no. 48), and the District Judge entered an order requiring that defendant file an answer to the complaint by February 5, 2021 (Docket no. 49). On February 6, 2021, counsel for defendant entered an appearance and requested an extension of the deadline to respond. (Docket no. 50). Defendant's motion was granted, and he filed an answer to the complaint on February 19, 2021 (Docket no. 54). The Elzagally plaintiffs filed their amended complaint on July 9, 2021 (Docket no. 69), and defendant filed his answer on July 11, 2021 (Docket no. 71). On July 12, 2021, the District Judge entered an amended scheduling order reopening discovery in the case. (Docket no. 73).

5

On August 17, 2021, the Elzagally plaintiffs filed a motion to compel alleging that defendant's responses to their First Set of Document Requests and First Set of Interrogatories were deficient. (Docket no. 76). In his opposition to the motion, defendant argued that the state secrets privilege recognized for the U.S. executive branch should also apply to foreign governments in TVPA actions and that he should be not be compelled to disclose Libyan military secrets. (Docket no. 79). On September 14, 2021, the court granted the Elzagally plaintiffs' motion in part, rejected defendant's state secrets argument, and directed defendant to provide full and complete responses to the outstanding discovery requests. (Docket no. 84).

On October 2, 2021, the Elzagally plaintiffs served a Notice of Deposition on defendant scheduling a videoconference deposition for October 12, 2021. (Docket no. 97-1). On October 8, 2021, defendant filed a motion for a protective order to prevent his deposition. (Docket no. 92). The Elzagally plaintiffs filed an emergency motion to compel defendant's deposition on October 11, 2021. (Docket no. 95). On October 14, 2021, the court denied defendant's motion for a protective order, finding that defendant's arguments regarding state secrets and related doctrine were "'similar' if not nearly identical" to those that the court had previously rejected. (Docket no. 106). The court further granted the Elzagally plaintiffs' motion to compel and ordered defendant to sit for a deposition within fourteen (14) days after entry of the order.[4] *Id.*

On October 22, 2021, the District Judge ordered that this case be consolidated with the *al-Suyid* and *Hamza* matters for discovery and pretrial matters. (Docket no. 118). On November 4, 2021, the District Judge ordered that all three actions be stayed pending the conclusion of Libya's apparently upcoming election. (*Elzagally*, Docket no. 123; *al-Suyid*, Docket no. 175; *Hamza*, Docket no. 91).

---

[4] Defendant objected to the order, and the District Judge overruled his objection on October 29, 2021. (Docket no. 121).

6

### ii. *al-Suyid Action (1:20-cv-0170-LMB-JFA)*

The al-Suyid plaintiffs filed their complaint in this action on February 18, 2020. (Docket no. 1). On March 20, 2020, the al-Suyid plaintiffs filed an affidavit certifying that defendant was served by mail on March 14, 2020. (Docket no. 20). Defendant failed to file a responsive pleading, and the Clerk's Office entered a default as to defendant on May 5, 2020. (Docket no. 25). The al-Suyid plaintiffs filed a motion for default judgment on May 22, 2022 (Docket no. 27), and the court filed a Report and Recommendation on June 17, 2020 recommending that the al-Suyid plaintiffs' motion be granted (Docket no. 31). Counsel entered an appearance on behalf of defendant on July 31, 2020 (Docket no. 32), and the Clerk's Entry of Default was set aside on August 6, 2020 (Docket no. 35). Defendant filed a motion to dismiss (Docket no. 38), which the District Judge granted in part on September 29, 2020 (Docket no. 52).

In early 2021, defendant's counsel requested leave to withdraw, which the District Judge granted on January 12, 2021 (Docket no. 56), and the District Judge entered an order requiring that defendant file an answer to the complaint by February 5, 2021 (Docket no. 57). Counsel for defendant entered an appearance and requested an extension of the deadline to respond on February 8, 2021. (Docket no. 59). Defendant's motion was granted, and he filed an answer to the complaint on February 19, 2021 (Docket no. 66).[5] On February 23, 2021, the District Judge entered a scheduling order opening discovery in the case. (Docket no. 67).

On September 10, 2021, the al-Suyid plaintiffs served a Notice of Deposition on defendant scheduling a videoconference deposition on September 22, 2021. (Docket no. 113-10). On September 17, 2021, the al-Suyid plaintiffs filed a motion to compel discovery from and deposition of defendant. (Docket no. 112). In their memorandum in support of their motion, the

---

[5] Defendant filed an amended answer on April 1, 2021. (Docket no. 86).

7

al-Suyid plaintiffs indicated that defendant served deficient responses to their First Set of Requests for Production, failed to respond entirely to their First Set of Interrogatories by the September 3, 2021 deadline, refused to appear for the September 22 deposition, and refused to reschedule the deposition. (Docket no. 113). On September 24, 2021, defendant filed a motion for a protective order to limit his discovery obligations. (Docket no. 115). In his memoranda in support of his motion and in opposition to the al-Suyid plaintiffs' motion, defendant reasserted largely the same state secrets argument that he had made in his prior opposition to the Elzagally plaintiffs' motion to compel, but he failed to notify the court of the earlier adverse decision in the *Elzagally* matter. (Docket nos 116, 119). On October 1, 2021, the court granted the al-Suyid plaintiffs' motion to compel in part and ordered defendant to respond to the discovery requests within fourteen (14) days after entry of the order. (Docket no. 127). The court further denied defendant's motion for a protective order.[6] (Docket no. 128).

On October 4, 2021, the al-Suyid plaintiffs again served a Notice of Deposition on defendant scheduling a videoconference deposition on October 13, 2021. (Docket no. 145-6). On October 8, 2021, defendant served his objection to the Notice of Deposition asserting the same arguments that had already been rejected in both the instant case and in the *Elzagally* matter. (Docket no. 145-7). Defendant did not appear for his deposition, and the al-Suyid plaintiffs filed another motion to compel defendant's deposition on October 15, 2021 (Docket no. 144). On October 22, 2021, the court granted the al-Suyid plaintiffs' motion to compel and ordered defendant to sit for a deposition within fourteen (14) days after entry of the order.[7] (Docket no. 164). In an affidavit filed with the instant motion, counsel for the al-Suyid plaintiffs

---

[6] Defendant objected to these orders, and the District Judge overruled his objections on October 29, 2021. (Docket no. 173).

[7] Defendant objected to this order, and the District Judge overruled his objection as to the order compelling his deposition. (Docket no. 173).

represents that defendant was noticed for a deposition on November 1, 2021, which was rescheduled to November 9, 2021. (Docket no. 200-1 ¶ 4). The November 9, 2021 deposition did not occur in light of the District Judge's November 4, 2021 order staying the three cases (Docket no. 175).

        *iii.*     *Hamza Action (1:20-cv-1038-LMB-JFA)*

The Hamza plaintiffs filed the original complaint in this action on September 3, 2020 (Docket no. 1) and filed an amended complaint on September 17, 2020 (Docket no. 8). On December 2, 2020, the Hamza plaintiffs filed affidavits certifying that defendant was served by posting and certified mail on December 1 and 2, 2020. (Docket nos. 9, 10). Defendant failed to file a responsive pleading, and the Clerk's Office entered a default as to defendant on January 4, 2021. (Docket no. 12). Counsel entered an appearance on behalf of defendant on February 8, 2021 (Docket no. 13), and the Clerk's Entry of Default was set aside on February 23, 2021 (Docket no. 22). Defendant filed a motion to dismiss (Docket no. 24), which the District Judge granted in part on March 26, 2021 (Docket no. 33). Defendant filed an answer on July 20, 2021 (Docket no. 40), and the District Judge entered a scheduling order opening discovery in the case on July 21, 2021 (Docket no. 41).

On August 20, 2021, the Hamza plaintiffs served a Notice of Deposition on defendant scheduling a deposition on September 20, 2021. (Docket no. 64-1 at 7). Defendant did not serve any objections to the notice pursuant to Local Civil Rule 26(C), but defense counsel notified counsel for the Hamza plaintiffs less than two days before the scheduled deposition that defendant would not be appearing because "[a]nswering questions by deposition would place him in criminal jeopardy in Libya" (*Id.* at 20).

9

On September 24, 2021, defendant filed a motion for a protective order to limit his discovery obligations. (Docket no. 44). In his memorandum in support of his motion, defendant again reasserted largely the same argument as he had made in his prior opposition to the Elzagally plaintiffs' motion to compel (and in his companion motion in the *al-Suyid* case, filed the same day), and he again failed to notify the court of the earlier adverse decision in the *Elzagally* matter. (Docket no. 45). On October 1, 2021, the court denied defendant's motion for a protective order.[8] (Docket no. 55).

On October 1, 2021, the Hamza plaintiffs again served a Notice of Deposition on defendant scheduling a deposition on October 14, 2021. (Docket no. 64-1 at 27). On October 8, 2021, defendant served his objection to the Notice of Deposition asserting the same arguments that had already been rejected in all three cases. (*Id.* at 31–32). Defendant did not appear for his deposition, and the Hamza plaintiffs filed a motion to compel defendant's deposition and for sanctions on October 14, 2021 (Docket no. 64). On October 22, 2021, the court granted the Hamza plaintiffs' motion to compel and ordered defendant to sit for a deposition within fourteen (14) days after entry of the order. (Docket no. 80). The court denied the Hamza plaintiffs' motion for sanctions without prejudice to their ability to seek sanctions at a later date.[9] (*Id.*).

    iv.    *Defendant's May 9, 2022 Deposition and the Instant Motions*

On March 11, 2022, the District Judge lifted the stay in the *Hamza* matter and ordered defendant to pay the Hamza plaintiffs' costs incurred due to his failure to attend the September 20 and October 14, 2021 depositions. (*Hamza*, Docket no. 106). On April 22, 2022, the District Judge lifted the stay in the *Elzagally* and *al-Suyid* matters. (*Elzagally*, Docket no. 130; *al-Suyid*,

---

[8] Defendant objected to this order, and the District Judge overruled his objections on October 29, 2021. (Docket no. 88).

[9] Defendant objected to these orders, and the District Judge overruled his objections on October 29, 2021. (Docket no. 88).

10

Docket no. 187). The parties in the three cases collectively agreed to conduct a joint deposition of defendant, and it was scheduled for May 9, 2022. (*Hamza*, Docket no. 111). Counsel for defendant appeared before the court on Friday, May 6, 2022 to address some outstanding issues relating to defendant's pending deposition but gave no indication that defendant was unable or unwilling to attend the deposition scheduled for the following Monday.

On May 20, 2022, the al-Suyid and Hamza plaintiffs filed motions for default judgment alleging that defendant failed to attend the May 9, 2022 deposition.[10] (*al-Suyid*, Docket no. 199; *Hamza*, Docket no. 129). Plaintiffs indicated that they received an email from defense counsel on May 7, 2022, one day after counsel's appearance in court, indicating that defendant would be unable to attend the May 9 deposition due to his "official duties and obligations." (*Hamza*, Docket no. 130-1 at 10). Defense counsel did not elaborate further but requested plaintiffs' consent to continue the deposition to mid-June. (*Id.*). Plaintiffs' counsel declined defendant's proposed alternative dates, and defendant failed to appear for the May 9, 2022 deposition. (*Hamza*, Docket no. 130-1 at 9; *al-Suyid*, Docket no. 200-1 ¶¶ 3–5). On June 10, 2022, this case was called in open court, and the parties appeared before the undersigned and presented their arguments on the motions for default judgment.[11]

## Proposed Findings and Recommendations

Plaintiffs allege that defendant has unreasonably and consistently failed to comply with his discovery obligations in each of the three cases. For this reason, plaintiffs seek an order

---

[10] The Elzagally plaintiffs filed their motion for default judgment on May 27, 2022 alleging similar claims. (*Elzagally*, Docket no. 145).

[11] The undersigned also heard argument on motions to withdraw filed by defendant's counsel in each case.

11

granting default judgment as a sanction in each case pursuant to Fed. R. Civ. P. 37.[12] (*Elzagally*, Docket no. 145; *al-Suyid*, Docket no. 199; *Hamza*, Docket no. 129). As explained in more detail below, the undersigned recommends a finding that: (1) defendant has acted in bad faith by refusing to comply with his litigation obligations, (2) that plaintiffs have been materially prejudiced by defendant's misconduct, (3) that Rule 37 sanctions are warranted here to deter discovery non-compliance, and (4) that no sanction less drastic than entry of default as to defendant's liabilty would likely be effective. For these reasons, the undersigned recommends that the court grant plaintiffs' motions in part and that default be entered in each case as to defendant's liability for plaintiffs' TVPA claims.

   i. *Legal Standard*

Fed. R. Civ. P. 37 gives the court broad discretion to order sanctions for a party's failure to cooperate in discovery. *See* Fed. R. Civ. P. 37(b)(2)(A). The court's discretion is somewhat narrower when considering whether to order a default judgment, which the Fourth Circuit has held should be limited to "that rare case where the conduct represents such 'flagrant bad faith' and 'callous disregard' of the party's obligation under the Rules as to warrant the sanction not simply for the purpose of preventing prejudice to the discovering party but as a necessary deterrent to others." *See Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 504 (4th Cir. 1977). Before ordering a default judgment as a discovery sanction, the court must consider: "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary . . .; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Mut. Fed. Sav. & Loan*

---

[12] The Hamza plaintiffs also seek an award of attorneys' fees and costs. (*Hamza*, Docket no. 129).

*Ass'n v. Richards & Assoc., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson*, 561 F.2d at 503–06).

    *ii.*  *Defendant's Bad Faith Conduct*

  Defendant's consistent disregard of deadlines and court orders over several years of litigation provides sufficient evidence of bad faith. Defendant's inability or unwillingness to comply with his obligations began even before the start of discovery. In each case, defendant failed to file responsive pleadings in a timely manner, resulting in a Clerk's entry of default that was later set aside. (*Elzagally*, Docket no. 12; *al-Suyid*, Docket no. 25; *Hamza*, Docket no. 12). In addition, defendant failed to respond timely to the Elzagally and al-Suyid plaintiffs' complaints following withdrawal of his original counsel. (*Elzagally*, Docket no. 49; *al-Suyid*, Docket no. 57). Instead, defendant's counsel entered an appearance and requested an extension of time to respond after the court-ordered deadline had already passed. (*Elzagally*, Docket no. 50; *al-Suyid*, Docket no. 59).

  Defendant consistently failed to adhere to his discovery obligations as well. Defendant provided deficient responses to the Elzagally plaintiffs' First Set of Document Requests and First Set of Interrogatories, which necessitated a motion to compel and a court order requiring that defendant provide full and complete responses. (*Elzagally*, Docket nos. 76, 84). Defendant failed to respond entirely to the al-Suyid plaintiffs' First Set of Interrogatories by the deadline and provided deficient responses to their First Set of Requests for Production, again necessitating a motion to compel and a court order. (*al-Suyid*, Docket no. 112, 127).

  Between the three cases, defendant has failed to attend at least six separate depositions, properly noticed for October 12, October 13, October 14, September 20, and September 22, 2021, and, most recently, May 9, 2022. (*Elzagally*, Docket no. 97-1; *al-Suyid*, Docket nos. 113-

10, 145-6; *Hamza*, Docket nos. 64-1 at 7, 64-1 at 27, 111). Defendant's refusal to sit for a deposition has been without adequate justification and in violation of at least one court order. (*Elzagally*, Docket no. 106). Defendant has instead engaged in extensive and unnecessary motions practice and has repeatedly filed duplicative motions for protective orders relying on state secrets and similar arguments that the court has previously rejected. (*Elzagally*, Docket no. 92; *al-Suyid*, Docket no. 115; *Hamza*, Docket no. 44).

Defendant's failure to attend his May 9, 2022 deposition is particularly troubling. Two days before his deposition, and only one day after appearing before this court and discussing matters related to that deposition, counsel for defendant indicated that defendant was unable to attend the deposition due to his "official duties and obligations." (*Hamza*, Docket no. 130-1 at 10). Defendant's oppositions to the instant motions provide no further elaboration, stating only that "[h]is duties in Libya caused an unexpected and unavoidable conflict with his date." (*Hamza*, Docket no. 137 at 2). Defendant's oppositions lack evidence any affidavit from defendant himself certifying under oath a reason for missing the latest deposition or indicating defendant's genuine intent to sit for a deposition. Based on defendant's history of discovery misconduct including failing to appear at other properly noticed depositions, counsel's statement in the pleadings alone that defendant eventually intends to sit for a deposition is wholly inadequate (*Hamza*, Docket no. 137 at 1). Moreover, it is not clear how counsel can represent that defendant intends to sit for a deposition while simultaneously indicating in motions to withdraw that defendant has "ceased meaningful communication and cooperation" with counsel. (Docket no. 203 at 3) (noting that "[a]ttempts to discuss the Defendant's obligations in this case and the others pending against the Defendant in this Court are now being ignored"). Defendant's

14

blatant and consistent refusal to comply with his discovery obligations fully support a finding of bad faith.

### iii. The Prejudicial Effect on Plaintiffs

As the direct result of defendant's bad faith conduct, plaintiffs have been unable to secure evidence reasonably necessary for substantive proceedings in their cases. As the *Elzagally* plaintiffs highlight in their memorandum in support of their motion for default judgment, defendant's responses to their interrogatories and requests for document production have been largely deficient. (*Elzagally*, Docket no. 145-1 at 3–4). The Elzagally plaintiffs note that the limited documents produced by defendant consisted entirely of "publicly available LNA public relations statements or copies of the Libyan penal code." (*Elzagally*, Docket no. 145-1 at 3). The Elzagally plaintiffs reasonably argue that it is "difficult to believe that [defendant] does not have access to any responsive documents other than public relations statements, such as plans, budgets, reports, maps, organizational charts, or any other type of non-public document relevant to the events in question." (*Elzagally*, Docket no. 145-1 at 4). The al-Suyid plaintiffs similarly note that nearly all of the few documents that defendant produced in discovery are publicly available and that defendant has consistently refused to produce responsive, non-public documents, even after entry of a protective order (*al-Suyid*, Docket no. 200 at 7–9). As noted above, defendant's prior arguments that he should not be required to produce such documents due to state secrets and related doctrine have been consistently rejected by the court. Nevertheless, it appears that defendant's stalling tactics were successful, as he now maintains that he no longer possesses the requested documents because he is no longer head of the LNA. (*Elzagally*, Docket no. 146 at 1; *al-Suyid*, Docket no. 205 at 1). Assuming this is true, defendant's argument bolsters plaintiffs' claims of prejudice, as plaintiffs no longer have the

15

same ability to secure documents that they should have been provided in response to discovery requests served in mid-2021.

Defendant devotes substantial portions of his oppositions to the argument that plaintiffs have not provided sufficient direct evidence to support their TVPA claims. (*Elzagally*; Docket no. 146; *al-Suyid*, Docket no. 205; *Hamza*, Docket no. 137). As the al-Suyid plaintiffs note, the standard for Rule 37 sanctions does not require that a movant offer direct evidence in support of its substantive claims.[13] (*al-Suyid*, Docket no. 206 at 2). Even considering plaintiffs' burden of production, this is hardly a case in which plaintiffs have offered no admissible evidence such that an order of default judgment would require "too many logical leaps." (*Hamza*, Docket no. 137 at 6); *see also Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1051 (D.C. Cir. 2014). As reflected in the exhibits to defendant's oppositions, plaintiffs have compiled extensive fact and expert witness deposition testimony in support of their claims. (*Elzagally*, Dockets nos. 146-3, 146-4, 146-5, 146-6; *Hamza*, Docket nos. 137-1, 137-2, 137-3, 137-4). The al-Suyid plaintiffs note that they have produced two hundred and twenty-five (225) pages of documents during discovery, including "autopsy photographs, physician's letters, photographs of Defendant with commanders in the Libyan National Army (LNA), who self-admittedly led the attacks on Plaintiffs, and videos of the LNA burning civilian houses." (Docket no. 206 at 2 n.2). That plaintiffs have not offered *more* evidence can be attributed to defendant's failure to adhere to his discovery responsibilities.

Contrary to defendant's suggestion otherwise, his affidavit denying all knowledge of the relevant events can hardly be considered an adequate substitute for thorough and complete discovery responses and deposition testimony taken under oath and subject to cross-examination.

---

[13] The undersigned further notes that plaintiffs' TVPA claims have each survived prior motions to dismiss. (*Elzagally*, Docket no. 43; *al-Suyid*, Docket no. 52; *Hamza*, Docket no. 33).

Defendant's refusal to comply with this court's discovery rules and orders has materially prejudiced plaintiffs by preventing them from determining the extent of defendant's knowledge of and responsibility for the events at issue, a key element of their TVPA claims.

### iv. *Need for Deterrence*

The extent and duration of defendant's noncompliance supports a finding that Rule 37 sanctions are necessary as a deterrent to similar discovery misconduct. The cases at issue involve serious claims alleging hundreds of millions of dollars of damages against defendant, a high-profile Libyan official subject to extensive media scrutiny. Despite the gravity of the claims at issue, defendant has steadfastly refused to sit for a properly noticed and scheduled deposition after several years of litigation. Notably, defendant fails to address the deterrence factor entirely in any of his oppositions. For these reasons, sanctions are warranted to discourage similarly situated parties from engaging in the same kinds of discovery misconduct.

### v. *Effectiveness of Less Drastic Sanctions*

It is apparent that sanctions other than entry of default as to liability would be ineffective at remedying defendant's discovery misconduct. As an initial matter, defendant was previously ordered to pay expenses for missed depositions (*Hamza*, Docket no. 106), but this did not appear to deter him from missing his most recent deposition. Defendant has also been warned multiple times that his failure to comply with his discovery obligations could result in a default (*Hamza*, Docket nos. 100 at 4, 106). *See Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). Defendant suggests that prohibiting him from testifying or introducing evidence would be a more appropriate sanction (*Hamza*, Docket no. 137 at 5), but this would not address the prejudice to plaintiffs from defendant's failure to cooperate with discovery. As noted above, the likelihood that defendant will ever sit for a deposition is

17

almost nonexistent. Adopting defendant's proposed sanction would effectively reward defendant by forcing plaintiffs to meet their burden of proof without the benefit of thorough and complete discovery. For these reasons, entry of default as to liabity is the least drastic sanction that would remedy defendant's failure to comply with his discovery obligations.

Based on the above findings, the undersigned recommends that the court grant plaintiffs' motions in part and enter a default as to defendant's TVPA liability in each of the underlying cases. (*Elzagally*, Docket no. 145; *al-Suyid*, Docket no. 199; *Hamza*, Docket no. 129). This is one of the rare circumstances in which a party shows such "callous disregard" of its own discovery obligations that default judgment is warranted. *See Wilson*, 561 F.2d at 504. When granting default as a discovery sanction pursuant to Fed. R. Civ. P. 37, the court may, in certain circumstances, also award damages based on the pleadings. *Anderson*, 155 F.3d at 507. Despite the egregiousness of his conduct, defendant should be given an opportunity to contest the amount of damages alleged in each of these cases to ensure that the sanctions are no more severe than reasonably necessary. For this reason, the undersigned recommends that the court grant plaintiffs' motions in part and enter a default as to liability but require plaintiffs to establish their claims for damages.

In their motion for default judgment, the Hamza plaintiffs also seek an award of $2,249 in cancellation fees resulting from defendant's missed May 9, 2022 deposition, and attorneys' fees for "deposition preparation, the filing of the instant motion and/or the litigation in its entirety." (Docket no. 130 at 8 n.3). The Hamza plaintiffs do not cite to any authority in support of their request for attorneys' fees, so the undersigned recommends that it be denied. The Hamza plaintiffs' request for costs associated with the May 9, 2022 deposition is reasonable and consistent with the court's prior order awarding costs incurred for defendant's other missed

depositions. (*Hamza*, Docket no. 106). For these reasons, the undersigned recommends that the Hamza plaintiffs be awarded $2,249 in costs for defendant's most recent deposition.

## Conclusion

For the reasons stated above, the undersigned magistrate judge recommends that plaintiffs' motions for default judgment (*Elzagally*, Docket no. 145; *al-Suyid*, Docket no. 199; *Hamza*, Docket no. 129) be granted in part as to defendant's liability for their TVPA claims. The undersigned recommends that the motions be denied to the extent that they seek an award of damages. The undersigned further recommends that the Hamza plaintiffs' request for attorney's fees be denied and that their request for $2,249 in costs be granted.

## Notice

By means of the court's electronic filing system, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

Entered this 10th day of June, 2022.

/s/ JFA
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia