# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

|  |  |  |
|---|---|---|
| AIDA ELZAGALLY, et al. | ) | |
| Plaintiffs, | ) | |
| v. | ) | No.   1:19 cv 0853 (LMB/JFA) |
| HALIFA HIFTER | ) | Filed Unde Seal |
| Defendant, | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiffs Aida Elzagally, Abdulhameed Tunalli, Ayah Tunalli, Alaa Tunalli, Abdulrrauf Tunalli, Muhammad Tunalli, Abduladeem Tunalli, Mais Ahmed Mayouf and Abdulhameed Al-Haramah by counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, submit this memorandum in support of their Motion for Summary Judgment. Based on the undisputed material facts and the points and authorities cited herein, Plaintiffs' Motion should be granted.

Table of Contents

I.     INTRODUCTION ........................................................................................................... 3
II.    STATEMENT OF UNDISPUTED FACTS................................................................... 3
   A.    Plaintiff Elzagally and family of Decedent Msaddek Tunalli........................................ 3
   B.    Plaintiff Mayouf............................................................................................................. 5
   C.    Plaintiff Al Harramah..................................................................................................... 5
   D.    Defendant Khalifa Hiftar ............................................................................................... 6
III.   LEGAL STANDARD.................................................................................................... 7
   A.    Standard on Summary Judgment. .................................................................................. 7
IV.    ARGUMENT ................................................................................................................. 9
   A.    Plaintiffs are Entitled to Summary Judgment on Plaintiffs' TVPA Claim ..................... 9
   B.    Plaintiffs are entitled to damages under the TVPA. .................................................... 12
   C.    Plaintiffs' Claims Are Not Preempted.......................................................................... 14
V.     CONCLUSION............................................................................................................ 14

I.     INTRODUCTION

This case arises from the death of civilians in Libya from weapons which are exclusively used by forces of the Libyan National Army (LNA) funded and under the command of Field Marshal Khalifa Hifter (Hifter), a citizen of the United States and self-declared leader of the LNA based in Benghazi, Libya. Forces loyal to General Hifter have launched an assault on the western Libyan city of Tripoli and have controlled territory in the eastern part of that country. The law controlling this case is likewise straightforward. It is as settled as it is simple.

Here, Hifter's LNA troops indiscriminately bombed multiple areas in Libya, causing an extrajudicial killing of the decedents in this matter. Under command responsibility, it is clear that Hifter had a superior-subordinate relationship with the LNA soldiers, that he knew or should have known that his troops would commit these extrajudicial killings through the deliberate act of indiscriminately bombing into civilian areas, and did not stop them or punish them.

Plaintiffs' present sufficient undisputed evidence for this Court to impose liability on Hifter under the Torture Victims Protection Act ("TVPA") because soldiers under his direct control with weapons that he provided caused the death of Plaintiffs' next of kin in a war zone. This is not guilt by association. As a result, summary judgment against Hifter is warranted.

II.    STATEMENT OF UNDISPUTED FACTS

   A. Plaintiff Elzagally and family of Decedent Msaddek Tunalli

1.     ████████████████████████████████████████████████████████ *See* Exhibit 1, Depo of Aida Elzagally at 14.

3

2. ███████████████████████████████████████

███████████████████ *See* Exhibit 2, Intake interview with Fathi Jaballah at 2.

3. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████ *Id.* at 2.

4. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████ *Id.* at 2.

5. ███████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████ *See* Exhibit 1,

Elzagally Depo. at 57-60.

6. ███████████████████████████████████████

███████████████████████████████████████████

*Id.* at 57-60.

7. ███████████████████████████████████████

████████████████████████████████████. *Id.* at 61-64.

8. ███████████████████████████████████████

███████████████████████████████████████████

██████████████████ *Id.* at 65-68.

9. 

*Id.* at 69-72.

10.

*Id.* at 73-76.

11.

*Id.* at 65-68.

12.

*Id.* at p. 45-48.

### B. Plaintiff Mayouf

13. Plaintiff Mayouf alleges that her mother was killed in Libya by forces armed and commanded by Hifter. On April 16, 2019, Haftar and his forces launched missiles into the civilian neighborhood of Hay Alintassar in Trippoli in which Mufida Sasi Abu Gasiah, her mother, sister, and young daughter lived killing them all. Ex. 7, 8.

### C. Plaintiff Al Harramah

14. Plaintiff Al Harramah alleges that his son Dr. Ayman Al-Harramah was killed in Libya by forces armed and commanded by Hifter. On April 6, 2019, in the Spring Valley area, also known in Arabic as "Wady Al-Rabii", Dr. Ayman al-Harramah was doing his work providing medical care and saving lives in a civilian field hospital when Defendant Haftar indiscriminately bombed the hospital, killing Dr. Ayman al-Harramah. Ex. 7, 8.

D.   **Defendant Khalifa Hiftar**

15.   ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████  *See* Exhibit 3, Hiftar Depo. June 26, 2023, at 202:16-20.

16.   ███████████████████████████████████████████

███████████████████████████████████  *Id*. at 197-204.

17.   Hifter admitted to being the commander of the LNA. *See* Answer, ECF ¶71.

18.   ███████████████████████████████████████████

███████████████████████████████████████  *Id*. at 201..

19.   ███████████████████████████████████████████  *Id.* at 222:1-14.

20.   ███████████████████████████████████████████

███████████████████████████████████████████  *Id.* at 217.

███████████████████████████████████

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████  *Id.* at 211:12-20.

22.   The United Nations Human Rights Council reported as part of its 2020 annual report:

> Airstrikes were the leading cause of civilian casualties during the period under review, accounting for 394 victims (182 deaths and 212 injured),

> including 302 men, seven women, 24 boys, and 53 males whose age could not be determined, followed by ground fighting, improvised explosive devices, abductions and killings. UNSMIL/OHCHR documented the highest number of civilian casualties in the western part of the country (171 deaths and 182 injured), followed by the southern part (97 deaths and 96 injured) and eastern areas (16 deaths and 85 injured). Most of the casualties were attributed to the Libyan National Army. Situation of human rights in Libya, and the effectiveness of technical assistance and capacity-building measures received by the Government of Libya, A/HRC/43/75 at 4. *See* Exhibit 7.

## III.  LEGAL STANDARD

### A.  Standard on Summary Judgment.

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits or other materials in the record, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

> [T]he function of a motion for summary judgment is to smoke out if there is any case, i.e., any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition.

*Bland v. Norfolk & S. R.R. Co.*, 406 F.2d 863, 866 (4th Cir. 1969). Rule 56 must be construed with regard not only for the rights of plaintiffs, "but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party seeking summary judgment bears the initial burden of showing the absence of any issue of material fact. *Celotex,* 477 U.S. at 322-23 (1986). The moving party, however, does not have the burden of producing evidence; it may permissibly demonstrate the absence of evidence. *Cray Commc'n. v. Novatel Computer Sys.*, 33 F.3d 390, 393 (4th Cir. 1994).

The party opposing a properly supported motion for summary judgment, however, "may

not rest upon mere allegation or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Conclusory or speculative allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). Likewise, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another," *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985), and a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. Evidence brought in opposition to a motion for summary judgment must be significantly probative and, if not, "summary judgment may be granted." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007).

Summary judgment is favored under the federal rules as "an important mechanism for weeding out 'claims and defenses [that] have no factual basis,'" *Marchant v. Boddie-Noell Enterprises, Inc.*, 344 F. Supp. 2d 495, 497 (W.D. Va. 2004) (quoting *Celotex Corp.*, 477 U.S. at 322), and is proper even if there are disputes of material fact when the evidence offered in opposition to the motion does not create a "genuine issue" of fact requiring trial. *Anderson*, 477 U.S. at 247.

The standards for this motion are stated in this Court's decision in *Ghebreab v. Inova Health Sys.*, No. 1:16-cv-1088 (LMB/JFA), 2017 WL 1520427, at *6 (E.D. Va. April 26, 2017):

> Summary judgment is appropriate where the record demonstrates that "there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the Court must view the record "in the light most favorable to the non-moving party," *Dulaney v. Packaging Corp. of Am.,* 673 F.3d 323, 324 (4th Cir. 2012), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" to overcome summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *see also Am. Arms Int'l v. Herbert,* 563 F.3d 78, 82 (4th Cir. 2009). Rather, a genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

8

party." *Anderson,* 477 U.S. at 248. Moreover, "[t]he mere existence of some alleged factual dispute" cannot defeat a motion for summary judgment. *Hooven-Lewis v. Caldera,* 249 F.3d 259, 265 (4th Cir. 2001). Instead, the dispute must be both "material" and "genuine," meaning that it must have the potential to "affect the outcome of the suit under the governing law." *Id.*

IV.   **ARGUMENT**

After depositions and production of documents, Plaintiffs have corroborated their allegations that their respective next of kin were killed by weapons exclusively used by forces of LNA commanded by Hifter. Accepting Plaintiffs' allegations of abuse as true, they are entitled to summary judgment because the undisputed facts hold Hifter liable for these killings.

A.   **Plaintiffs are Entitled to Summary Judgment on Plaintiffs' TVPA Claim**

As explained by the United States Supreme Court, the TVPA makes available to all individuals, not just foreign citizens, a civil cause of action for torture and extrajudicial killing that may be brought against natural persons. *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1432 (2018). *See also Mohamad v. Palestinian Authority*, 566 U. S. 449, 451-452, 454 (2012). Specifically, the Act states that;

> "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation—(1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or "(2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death. . . . For the purposes of the TVPA, the term 'extrajudicial killing' means a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples. Such term, however, does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation." 28 U.S.C.S. § 1350 note.

Further, the TVPA continues:

> the term 'torture' means any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions),

9

> whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind…

*Id*.

Here, Hifter, an individual, under actual authority as the head of the Libyan National Army, commanded troops who repeatedly committed indiscriminate bombings in civilian areas of Libya, including the instances which resulted in the extrajudicial killing of decedents in this matter.

It is not necessary to prove that Hifter himself committed the extrajudicial killing of decedents. In recommending a default judgement in the *Al Suyid* case against Hifter, Judge Anderson stated:

> The Ninth Circuit in *Hilao* described the principle of "command responsibility" as that which "holds a superior responsible for the actions of subordinates" and found the United States had moved toward recognizing the applicability of the principle for torture occurring during peacetime, not just during wartime. *Hilao v. Estate of Marcos*, 103 F.3d 767, 777 (9th Cir. 1996). Further, as the court cited, the legislative history of the TVPA evidenced this move, explaining that under international law "responsibility for torture, summary execution, or disappearances extends beyond the person or persons who actually committed those acts—anyone with higher authority who authorized, tolerated or knowingly ignored those acts is liable for them." Id. (citing S. Rep. No. 249, at 9 (1991)). More recently, the Supreme Court has affirmed that "the TVPA contemplates liability against officers who do not personally execute the torture or extrajudicial killing." *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 458, 132 S. Ct. 1702, 182 L. Ed. 2d 720 (2012).

The record in this case requires entry of summary judgment for Plaintiffs as there is ample evidence that Hifter personnel committed these acts in violation of the TVPA and did so for the purpose of killing innocent civilians.

Decedents in this matter were killed by indiscriminate bombings in civilian areas. (Elzagally, Dockets nos. 146-3, 146-4, 146-5, 146-6.) See Exhibits 4-8. While Hifter states

that he does not know any facts related to these killings, he is unable to credibly rebut any facts linking his forces to the killings. Hifter's command of LNA forces is irrefutable. Further, Plaintiffs have developed evidence that combatants under the command and equipped by Hifter committed these killings. This Court has likewise recognized liability by a Defendant under the TVPA *in Bashe Abdi Yousuf v. Mohamed Ali Samantar*, 2012 U.S. Dist. LEXIS 122403, 2012 WL 3730617, where Judge Brinkema wrote:

> The Supreme Court recently affirmed that "the TVPA contemplates liability against officers who do not personally execute the torture or extrajudicial killing." *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1709, 182 L. Ed. 2d 720 (2012) (citation omitted). Even before Mohamad, "virtually every court to address the issue" has "recogniz[ed] secondary liability for violations of international law since the founding of the Republic." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 396 (4th Cir. 2011) (internal quotation marks and alterations omitted); accord *Doe VIII v. Exxon Mobil Corp.*, 654 F.3d 11, 19, 397 U.S. App. D.C. 371 (D.C. Cir. 2011) (citing *The Presbyterian Church of Sudan v. Talisman*, 582 F.3d 244, 258-59 (2d Cir. 2009); *Khulumani v. Barclay Nat'l Bank*, 504 F.3d 254, 260 (2d Cir. 2007) (per curiam); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1258 n.5 (11th Cir. 2009), abrogated on other grounds, Mohamad, 132 S. Ct. at 1706 & n.2). For command responsibility to apply, three elements must be established: (1) [A] superior-subordinate relationship between the defendant/military commander and the person or persons who committed human rights abuses; [*32] (2) the defendant/military commander knew, or should have known, in light of the circumstances at the time, that subordinates had committed, were committing, or were about to commit human rights abuses; and (3) the defendant/military commander failed to take all necessary and reasonable measures to prevent human rights abuses and punish human rights abusers. *Chavez*, 559 F.3d at 499 (holding that "command responsibility does not require proof that a commander's behavior proximately caused the victim's injuries") (citing *Ford v. Garcia*, 289 F.3d 1283, 1288 (11th Cir. 2002)); see also Hilao, 103 F.3d at 776-79 (same); see generally Doe v. Qi, 349 F. Supp. 2d 1258, 1329 (N.D. Cal. 2004) ("The principle of command responsibility that holds a superior responsible for the actions of subordinates appears to be well accepted in U.S. and international law in connection with acts committed in wartime . . . .") (citing In re Yamashita, 327 U.S. 1, 14-16, 66 S. Ct. 340, 90 L. Ed. 499 (1946)). *Samantar* at 31-32.

Unlike *Aziz* and *Talisman* cited above, where wholesale absence of facts were fatal to Plaintiffs' aiding and abetting claims, the set of facts presented in the present case requires entry of summary judgment.

11

Here, it is clear that Hifter is liable under the command responsibility of the TVPA. First, ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████ See Exh. 3, Hiftar Depo. p. 208:21. He states ████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████ Id. at p. 211:17-20. Second, it is clear that Hifter knew or should have known that his troops committed, were committing, or planned to commit these attacks. The LNA has committed numerous bombings of civilian areas in Tripoli while under the command of Hifter. *See Citing* Final report of the Panel of Experts on Libya established pursuant to Security Council resolution 1973 (2011) S/2019/914. *See* Exh. 8. Specifically, the 376-page report states:

> . . .until now, the only night operational capability for the delivery of explosive ordnance by the HAF [Haftar Armed Forces] was the Wing Loong unmanned combat air vehicle (UCAV), and possibly the IOMAX Archangel. The HAF is not operating any assets under its sole control with a night operational capability to accurately and precisely deliver HE A/C bombs of the type used in this incident. The attack on Tajoura shows some of the hallmarks of the use of precision guided munitions (PGM), as the odds of two unguided 'dumb' aircraft bombs both hitting the roofs of buildings, in what is a relatively under developed area in terms of low spatial density infrastructure, would be very low. *Id.* at 126, paragraph 14.

Further, Hifter clearly ████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ Please see Exh. 3; Hifter Deposition at 238:3-11, 264:19-265:9. See also Exh. 7, 8.

**B.    Plaintiffs are entitled to damages under the TVPA.**

Under the TVPA, individuals who may be claimants under the action are those "who may be [] claimant[s] in an action for wrongful death." 28 U.S.C. § 1350, note § 2(a)(2)

12

(2006). The TVPA "suggests looking to state law for 'guidance' regarding which parties would be proper wrongful death claimants and permits suit 'by the victim or the victim's legal representative or a beneficiary in a wrongful death action.'" *Sikhs for Justice Inc. v. Indian Nat'l Cong. Party*, 17 F. Supp. 3d 334, 346 (S.D.N.Y. 2014)(emphasis added)(quoting S. Rep. No. 102-249 at *7 (1991)), aff'd sub nom. *Sikhs for Justice, Inc. v. Nath*, 596 F. App'x 7 (2d Cir. 2014); see also *Baloco ex rel. Tapia v. Drummond Co.*, 640 F.3d 1338, 1349 (11th Cir. 2011) ("[S]tate law should govern the determination of whether a plaintiff is a claimant in an action for wrongful death and, where state law would provide no remedy, a court may apply the foreign law that would recognize the plaintiff's claim."). Pursuant to Va. Code § 8.01-52, damages for wrongful death:

> shall be distributed as specified under § 8.01-54 to (i) the surviving spouse, children of the deceased and children of any deceased child of the deceased, and the parents of the decedent if any of such parents, within 12 months prior to the decedent's death, regularly received support or regularly received services from the decedent for necessaries, including living expenses, food, shelter, health care expenses, or in-home assistance or care, or (ii) if there be none such, then to the parents, brothers and sisters of the deceased, and to any other relative who is primarily dependent on the decedent for support or services and is also a member of the same household as the decedent or (iii) if the decedent has left both surviving spouse and parent or parents, but no child or grandchild, the award shall be distributed to the surviving spouse and such parent or parents or (iv) if there are survivors under clause (i) or clause (iii), the award shall be distributed to those beneficiaries and to any other relative who is primarily dependent on the decedent for support or services and is also a member of the same household as the decedent or (v) if no survivors exist under clause (i), (ii), (iii), or (iv), the award shall be distributed in the course of descents as provided for in § 64.2-200.

The Plaintiffs in this case are all close family members of decedents that are entitled to recover under the wrongful death statute. Aida Elzagally, is the surviving spouse of Msaddek Tunalli, and their children, Ayah Tunalli, Alaa Tunalli, Abdulhammed Tunalli, Abdulrauff Tunalli, Muhammad Tunalli, and Abduladeem Tunalli, are all entitled to damages under the statute. *See* Exh. 4. Further, Mais Ahmed Mayouf is the birth daughter of Mufida Sasi Abu Gasiah and is

13

entitled to damages under the wrongful death statute. *See* Exh. 5. Last, Abdulhameed Al-Harramah is the father of the decedent, Dr. Ayman Al-Harramah, who left no spouse or children. See Exh. 6. Thus, all plaintiffs in this matter are entitled to damages under the TVPA.

### C. Plaintiffs' Claims Are Not Preempted

This case arises out of the war in Libya which is still engaged in civil war. Plaintiffs have been unable to redress any of their grievances in any forum in Libya. This court is not being asked to review any decision of a court in Libya and this Court remains the only forum in the world where Plaintiffs can seek recourse.

This evidence, combined with the lack of any contrary factual record, entitles Plaintiffs to summary judgement on their TVPA claim.

## V. CONCLUSION

The Court should grant summary judgment to Plaintiffs on Plaintiffs' claim.

Respectfully submitted,
/s/ Faisal Gill

February 23, 2024

Faisal Gill (VSB 93255)
Gill Law Firm
1717 Pennsylvania Ave Suite 1025
Washington DC 20006
fgill@glawoffice.com
310-418-6675

Counsel for Plaintiffs

14

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of February, 2024, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record in this case:

/s/_____

Faisal Gill (VSB 93255)
Gill Law Firm
1717 Pennsylvania Ave Suite 1025
Washington DC 20006
fgill@glawoffice.com
310-418-6675

Counsel for Plaintiffs