IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AIDA ELZAGALLY, et al.<br>Plaintiffs,<br><br>v.<br><br>KHALIFA HIFTER<br>Defendant, | No.   1:19-cv-0853 (LMB/JFA)<br><br>Filed Under Seal<br>Protective Order<br>ECF Np. 199 |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Aida Elzagally, Abdulhameed Tunalli, Ayah Tunalli, Alaa Tunalli, Abdulrrauf Tunalli, Muhammad Tunalli, Abduladeem Tunalli, Mais Ahmed Mayouf and Abdulhameed Al-Haramah ("Plaintiffs"), by counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, submit this reply brief in opposition to Defendant Khalifa Haftar's Motion for Summary Judgment. For the reasons set forth in this brief, Defendant's Motion should be denied.

**I.      INTRODUCTION**

Hiftar moved for summary judgment on Plaintiff's claims based on his denial of knowledge of deaths of Plaintiffs' respective next of kin, Plaintiffs' lack of standing and lack of this Court's jurisdiction over Hiftar due to not acting under color of authority of a foreign state recognized by the US government. Plaintiffs challenge all grounds based on the facts and case law cited herein.

**II.     STATEMENT OF DISPUTED MATERIAL FACTS SUPPORTING PLAINTIFF'S CLAIMS**

■■■■■Civil courts in Libya are not available for recourse for torture and killings. ■

■■■■■■■■■■■■■■■■■

1

2. Defendants has generally denied knowledge or responsibility for Plaintiffs fact and expert witness deposition testimony submitted in support of their TVPA claim. (ECF nos. 146-3, 146-4, 146-5, 146-6).

3. Plaintiffs are immediate family members of decedents in a society with no accessible marriage, birth, death or civil court records.

4. Libya has no functioning civil court system to seek redress.



 Hiftar is ultimately responsible for his troops

 Defendant

7. The Libyan National Army

### III. ARGUMENT

#### A. Summary Judgment Standard

Rule 56(c) requires that "[a] party asserting that a fact…is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the records; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

The relevant inquiry at the summary judgment stage analyzes "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Even though summary judgment may be an appropriate tool to eliminate trial in some cases, it "must be used carefully so as not ... to foreclose trial on genuinely disputed facts." *Thompson Everett, Inc. v. National Cable Adv., LP*, 57 F.3d 1317, 1322-23 (4th Cir.1995). "The question at the summary judgment stage is not whether a jury is sure to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally so find." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334 (4th Cir. 2011) (emphasis in original).

**B.    Defendant Hifter stipulated that he is an individual who acted under actual or apparent authority or under the color of law.**

Defendant attempts to argue that Plaintiffs cannot establish an essential element of the TVPA, but he has forgotten that he in fact stipulated to this exact element in order to free himself of the obligation of providing essential discovery in this matter.

On September 13, 2021, on Plaintiff's Motion to Compel Discovery, Defendant argued that providing specific information regarding the Libyan National Army would put Defendant Hifter's life at risk. *See* Exh. 15, 9:16-20. Judge Nachmanoff asked Plaintiffs if they would need the information they were seeking if the issue of Defendant being an individual acting under actual or apparent authority or under the color of law was not in dispute. *Id.* at 5:7-21. Plaintiffs agreed that the information would not be necessary if Defendant stipulated to such element of the TVPA. *Id.* at 15, 5:22-6:4. Judge Nachmanoff specifically asked Defendant

> Is it your position that the defendant is not going to seek to have the case dismissed on summary judgment or on another motion to dismiss or at trial based on the failure of the plaintiffs to be able to establish that he was acting at the time under color of law or the authority of the state of Libya?

*Id.* at 13:25-14:5. Judge Nachmanoff went further to state that the stipulation dealt specifically to the issue of the color of law or his actual or apparent authority. *Id.* at 14:11-15:3. Lindsay McKasson,

3

then counsel for Defendant in this matter, agreed, stating that "[Hifter] has authority as the field marshal of the LNA, and I think that is undisputed." *Id*. at 15:4-5. Judge Nachmanoff then stated that Ms. McKasson's response was a clear statement made in open court and addressed the issue sufficiently, and thus limited the scope of the discovery based on this stipulation. *Id.* at 15:6-8, 23:21-24:1, 24:3-13.

Thus, Defendant cannot argue that Plaintiffs cannot establish that he is not an individual acting under actual or apparent authority or under the color of law.

    C.    **Plaintiffs are Qualified as Representatives with Standing**

Defendant argues in his Memorandum that none of the Plaintiffs in this action are suing as representatives of the decedents. As an analogue to a cause of action under the TVPA, consider that Virginia law neither precludes not requires residency and formal appointment as an administrator to bring a cause of action for wrongful death. The relevant section of Virginia Code § 64.2-454 in its title envisages non-resident parties bringing an action for wrongful death. *See Id.* Appointment of administrator for prosecution of action for personal injury or wrongful death against or on behalf of estate of deceased resident or nonresident states:

> If a fiduciary has been appointed in a foreign jurisdiction, the fiduciary may qualify as administrator. The appointment of a fiduciary in a foreign jurisdiction shall not preclude a resident or nonresident from qualifying as an administrator for the purposes of maintaining a wrongful death action pursuant to § 8.01-50 or a personal injury action in the Commonwealth.

Each of the Plaintiffs has been clearly identified in the pleadings and subsequent motions as next of kin to the deceased individual: spouse, parent or child. None of the cases nor statutes cited by Defendant negate a cause of action based on failure of the incantation of the word "estate," "capacity," or representative. The Court shall not be led to dismiss this action when it is clear from the pleadings that no plaintiff in this case is claiming torture or death of himself or herself; rather that of an immediate relative with standing to bring a cause of action, in this case under the TVPA.

4

### D.     Hifter Can be Held Liable Under the TVPA

After depositions and production of documents, Plaintiffs have corroborated their allegations that their respective next of kin were civilians killed by weapons exclusively used by forces of LNA commanded by Hifter. Granting the Defendant summary judgment at this stage contravenes the fundamental motion of assembling a jury to determine the facts at issue. Only then can the Court determine whether Hifter is liable for these killings.

### A. Evidence Points to Civil Liability for Defendant on Plaintiffs' TVPA Claim

As explained by the United States Supreme Court, the TVPA makes available to all individuals, not just foreign citizens, a civil cause of action for torture and extrajudicial killing that may be brought against natural persons. *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1432 (2018). *See also Mohamad v. Palestinian Authority*, 566 U. S. 449, 451-452, 454 (2012). Specifically, the Act states that;

> "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation—(1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or "(2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death. . . . 28 U.S.C.S. § 1350 note.

    **1.**    Plaintiffs can establish deliberate or extrajudicial killings.

The TVPA defines an extrajudicial killing by stating

> For the purposes of the TVPA, the term 'extrajudicial killing' means a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples. Such term, however, does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation."

28 U.S.C.S. § 1350 note. First, it is clear that these actions were deliberate. By the continued acts of bombing numerous civilian areas of Western Libya, the LNA has made their intent shown and these actions are not mistakes. *See* Exhibit 7, p. 4, ¶14. Further, these actions were not authorized by a

5

previous judgment by a regularly constituted court. It was a deliberate act taken upon innocent victims for the control of Western Libya. Bombing innocent civilians is an internationally known war crime and is not subject to any lawful authority of a nation.

Here, Plaintiffs can establish deliberate and extrajudicial killings. First, it is well settled that Hifter's troops have a repeated history of bombing civilian areas in their pursuit of taking over Western Libya. *Id.* Second, eyewitnesses ███████████████████████████████████████████████████████████████████████████████████████████████████

    **2.**    Plaintiffs can establish that Hifter is liable through command responsibility.

Defendant further argues that Plaintiffs fail because it cannot be shown that Hifter himself ordered the LNA's actions. However, it is not necessary to prove that Hifter himself committed the extrajudicial killing of decedents or that he specifically ordered them. In recommending a default judgement in the *Al Suyid* case against Hifter, Judge Anderson stated:

> The Ninth Circuit in *Hilao* described the principle of "command responsibility" as that which "holds a superior responsible for the actions of subordinates" and found the United States had moved toward recognizing the applicability of the principle for torture occurring during peacetime, not just during wartime. *Hilao v. Estate of Marcos*, 103 F.3d 767, 777 (9th Cir. 1996). Further, as the court cited, the legislative history of the TVPA evidenced this move, explaining that under international law "responsibility for torture, summary execution, or disappearances extends beyond the person or persons who actually committed those acts—anyone with higher authority who authorized, tolerated or knowingly ignored those acts is liable for them." *Id.* (citing S. Rep. No. 249, at 9 (1991)). More recently, the Supreme Court has affirmed that "the TVPA contemplates liability against officers who do not personally execute the torture or extrajudicial killing." *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 458, 132 S. Ct. 1702, 182 L. Ed. 2d 720 (2012).

The record in this case shows ample evidence that Hifter's personnel committed these acts in violation of the TVPA and did so for the purpose of killing innocent civilians. Decedents in this matter were killed by indiscriminate bombings in civilian areas. (*Elzagally*, Dockets nos. 146-3, 146-4, 146-5, 146-6.) Further, Plaintiffs have developed evidence that combatants under the

command and equipped by Hifter committed these killings. *See* Exhibit 2A at 6:13-22. This Court has likewise recognized liability by a Defendant under the TVPA *in Bashe Abdi Yousuf v. Mohamed Ali Samantar*, 2012 U.S. Dist. LEXIS 122403, 2012 WL 3730617, where Judge Brinkema wrote:

> The Supreme Court recently affirmed that "the TVPA contemplates liability against officers who do not personally execute the torture or extrajudicial killing." *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1709, 182 L. Ed. 2d 720 (2012) (citation omitted). Even before Mohamad, "virtually every court to address the issue" has "recogniz[ed] secondary liability for violations of international law since the founding of the Republic." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 396 (4th Cir. 2011) (internal quotation marks and alterations omitted); accord *Doe VIII v. Exxon Mobil Corp.*, 654 F.3d 11, 19, 397 U.S. App. D.C. 371 (D.C. Cir. 2011) (citing *The Presbyterian Church of Sudan v. Talisman*, 582 F.3d 244, 258-59 (2d Cir. 2009); *Khulumani v. Barclay Nat'l Bank*, 504 F.3d 254, 260 (2d Cir. 2007) (per curiam); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1258 n.5 (11th Cir. 2009), abrogated on other grounds, Mohamad, 132 S. Ct. at 1706 & n.2). For command responsibility to apply, three elements must be established: (1) [A] superior-subordinate relationship between the defendant/military commander and the person or persons who committed human rights abuses; [*32] (2) the defendant/military commander knew, or should have known, in light of the circumstances at the time, that subordinates had committed, were committing, or were about to commit human rights abuses; and (3) the defendant/military commander failed to take all necessary and reasonable measures to prevent human rights abuses and punish human rights abusers. *Chavez*, 559 F.3d at 499 (holding that "command responsibility does not require proof that a commander's behavior proximately caused the victim's injuries") (citing *Ford v. Garcia*, 289 F.3d 1283, 1288 (11th Cir. 2002)); *see also Hilao*, 103 F.3d at 776-79 (same); *see generally Doe v. Qi*, 349 F. Supp. 2d 1258, 1329 (N.D. Cal. 2004) ("The principle of command responsibility that holds a superior responsible for the actions of subordinates appears to be well accepted in U.S. and international law in connection with acts committed in wartime . . . .") (citing In re Yamashita, 327 U.S. 1, 14-16, 66 S. Ct. 340, 90 L. Ed. 499 (1946)). *Samantar* at 31-32.

Here, it is clear that a jury can find Hifter liable under the command responsibility of the TVPA. First, there is evidence of the existence of a superior-subordinate relationship between Hifter and the LNA. In his deposition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Second, it is clear that Hifter knew or should have known that his troops committed, were committing, or planned to

commit these attacks. The LNA has committed numerous bombings of civilian areas in Tripoli while under the command of Hifter. *Citing* Final report of the Panel of Experts on Libya established pursuant to Security Council resolution 1973 (2011) S/2019/914. *See* Exh. 8. Specifically, the 376-page report states:

> . . .until now, the only night operational capability for the delivery of explosive ordnance by the HAF [Haftar Armed Forces] was the Wing Loong unmanned combat air vehicle (UCAV), and possibly the IOMAX Archangel. The HAF is not operating any assets under its sole control with a night operational capability to accurately and precisely deliver HE A/C bombs of the type used in this incident. The attack on Tajoura shows some of the hallmarks of the use of precision guided munitions (PGM), as the odds of two unguided 'dumb' aircraft bombs both hitting the roofs of buildings, in what is a relatively under developed area in terms of low spatial density infrastructure, would be very low. *Id.* at 126, paragraph 14.

Further, there is evidence in the record that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████:9.

Whether the targets were civilians is also a fact for the jury to decide. Defendant states that Plaintiff ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Virginia Model Jury Instruction 2.060 states:

Party Bound by His Own Testimony

When one of the parties testifies unequivocally to facts within his own knowledge, those statements of fact and the necessary inferences from them are binding upon him. He cannot rely on other evidence in conflict with his own testimony to strengthen his case.

**However, you must consider his testimony as a whole, and you must consider a statement made in one part of his testimony in the light of any explanation or**

**clarification made elsewhere in his testimony.** [Emphasis added]

While Hifter states that he does not know any facts related to these killings, his command of LNA forces is irrefutable and this evidence, combined with genuine issues of fact regarding his knowledge of his troops' action in eastern Libya, should prevent this Court from granting summary judgement to Hiftar on Plaintiffs' TVPA claim.

  E. **Defendant cannot establish head of state immunity.**

Plaintiffs rely on the multitude of litigation that has taken place in this action already in direct conflict with Defendant's arguments regarding head of state immunity. First, this Court rightfully gave the U.S. State Department the ability to weigh in and state that immunity should be granted to Defendant. The U.S. Department took no such action. Plaintiffs rely on this Court's earlier decisions on the issue and also on the binding law of the Fourth Circuit in *Samantar*, where the Court states

> Moreover, we find Congress's enactment of the TVPA, and the policies it reflects, to be both instructive and consistent with our view of the common law regarding these aspects of *jus cogens*. Plaintiffs asserted claims against Samantar under [**35] the TVPA which authorizes a civil cause of action against "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to torture" or "extrajudicial killing." Pub. L. 102-256, § 2(a), 28 U.S.C. 1350 note. "The TVPA thus recognizes explicitly what was perhaps implicit in the Act of 1789—that the law of nations is incorporated into the law of the United States and that a violation of the international law of human rights is (at least with regard to torture) *ipso facto* a violation of U.S. domestic law." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 105 (2d Cir. 2000). Thus, in enacting the TVPA, Congress essentially created an express private right of action for individuals victimized by torture and extrajudicial killing that constitute violations of *jus cogens* norms. *See* S. Rep. No. 102-249, at 8 (1991) ("[B]ecause no state officially condones torture or extrajudicial killings, few such acts, if any, would fall under the rubric of 'official actions' taken in the course of an official's duties.").

*Yousuf v. Samantar*, 699 F.3d 763, 777 (4th Cir. 2012).

There is no doubt that the bombing of civilians is a violation of *jus cogens* norms. Thus, Hifter is not entitled to head of state immunity in order to shield himself from liability in this matter.

  F. **Plaintiffs have established evidence that there are no adequate and available legal remedies in Libya.**

While the TVPA requires the exhaustion of all adequate remedies in the place where the conduct giving rise to the action occurred, an allegation of failure to exhaust remedies is an affirmative defense for which Defendant bears the burden of proof. "[Defendant] bears the burden of showing the availability and adequacy of the foreign remedies he contends Plaintiffs failed to exhaust." *Lizarbe v. Rondon*, 2009 U.S. Dist. LEXIS 70647, *6 (D.Md. Aug. 12, 2009) (citing *Jean v. Dorelien*, 431 F.3d 776, 781 (11th Cir. 2005)). This burden of proof is substantial. *Dorelien*, 431 F.3d at 781. "To the extent that there is any doubt . . . both Congress and international tribunals have mandated that . . . doubts [concerning the TVPA and exhaustion are to] be resolved in favor of the plaintiffs." *Enahoro v. Abubakar*, 408 F.3d 877, 892 (7th Cir. 2005).

First, Defendant attempts to utilize expert opinion as support to meet the burden of their affirmative defense when this Court made clear that they had lost any chance to present such evidence. [ECF Doc. No. 229, 234]. Defendant specifically asked to late designate an expert on the legal system in Libya even though the deadline for designating experts had well passed, and the Court denied such motion. Defendant's attempt to use such inadmissible evidence to support their Motion for Summary Judgment should be completely ignored by this Court.

Second, Plaintiffs have established through evidence the unavailability of an adequate legal remedy in Libya. Through their expert, Plaintiffs can establish that the legal system in Libya is one that has in repeated instances (1) not taken actions required by law or (2) taken actions which legitimize wrongdoing in violation of the law. Further, the expert can speak to whether the Libyan legal court is even equipped to handle the adjudication of the rights of hundreds, even thousands, and individuals whose human rights have been violated. Further, the expert can speak to the lack of any acknowledgment in the Libyan legal system, whether in the penal code or elsewhere, of the prohibition of war crimes or crimes against humanity.

Last, by Defendant's own arguments throughout this litigation, it is clear that there is no adequate legal remedy in Libya. As Defendant has stated numerous times, Libya is in the midst of a civil war, in which two factions of the country have created their own independent governing systems. Thus, any kind of adjudication from one court within Libya would not hold any enforceability against actors working under the competing faction. Thus, despite Defendant's efforts to improperly introduce expert opinion regarding the legal system in Libya, the running of courts is not enough to show an adequate legal remedy.

**G.        Plaintiffs are entitled to damages under the TVPA.**

Under the TVPA, individuals who may be claimants under the action are those "who may be [] claimant[s] in an action for wrongful death." 28 U.S.C. § 1350, note § 2(a)(2) (2006). The TVPA "suggests looking to state law for 'guidance' regarding which parties would be proper wrongful death claimants and permits suit 'by the victim or the victim's legal representative or a beneficiary in a wrongful death action.'" *Sikhs for Justice Inc. v. Indian Nat'l Cong. Party*, 17 F. Supp. 3d 334, 346 (S.D.N.Y. 2014)(emphasis added)(quoting S. Rep. No. 102-249 at *7 (1991)), aff'd sub nom. *Sikhs for Justice, Inc. v. Nath*, 596 F. App'x 7 (2d Cir. 2014); see also *Baloco ex rel. Tapia v. Drummond Co.*, 640 F.3d 1338, 1349 (11th Cir. 2011) ("[S]tate law should govern the determination of whether a plaintiff is a claimant in an action for wrongful death and, where state law would provide no remedy, a court may apply the foreign law that would recognize the plaintiff's claim."). Pursuant to Va. Code § 8.01-52, damages for wrongful death:

> shall be distributed as specified under § 8.01-54 to (i) the surviving spouse, children of the deceased and children of any deceased child of the deceased, and the parents of the decedent if any of such parents, within 12 months prior to the decedent's death, regularly received support or regularly received services from the decedent for necessaries, including living expenses, food, shelter, health care expenses, or in-home assistance or care, or (ii) if there be none such, then to the parents, brothers and sisters of the deceased, and to any other relative who is primarily dependent on the decedent for support or services and is also a member of the same household as the decedent or (iii) if the decedent has left both surviving spouse and parent or parents, but no child

11

> or grandchild, the award shall be distributed to the surviving spouse and such parent or parents or (iv) if there are survivors under clause (i) or clause (iii), the award shall be distributed to those beneficiaries and to any other relative who is primarily dependent on the decedent for support or services and is also a member of the same household as the decedent or (v) if no survivors exist under clause (i), (ii), (iii), or (iv), the award shall be distributed in the course of descents as provided for in § 64.2-200.

As stated earlier challenging Defendant's arguments that Plaintiffs lack standing, each Plaintiff in this case is an immediate family member of decedents that are entitled to recover under the wrongful death statute. Aida Elzagally, is the surviving spouse of Msaddek Tunalli, and their children, Ayah Tunalli, Alaa Tunalli, Abdulhammed Tunalli, Abdulrauff Tunalli, Muhammad Tunalli, and Abduladeem Tunalli, are all entitled to damages under the statute. *See* Exh. 4. Further, Mais Ahmed Mayouf is the birth daughter of Mufida Sasi Abu Gasiah and is entitled to damages under the wrongful death statute. *See* Exh. 5. Last, Abdulhameed Al-Harramah is the father of the decedent, Dr. Ayman Al-Harramah, who left no spouse or children. *See* Exh. 6. Thus, all plaintiffs in this matter are entitled to damages under the TVPA.

### H.   Hifter Waived Any Objections to Personal Jurisdiction by Subjecting Himself to this Court.

Defendant now argues at this summary judgment stage that this case should be dismissed for lack of personal jurisdiction. However, Defendant has waived such argument. Defendant filed a motion to dismiss in this matter on August 20, 2020. ECF No. 34. In this Motion, Defendant fails to mention or raise any defense concerning lack of personal jurisdiction over Defendant Hifter for lack of residency. Instead, his motion was based on head of state immunity, failure to exhaust all remedies, failure to state a claim, non-justiciable political question, and insufficient service of process. *Id.*. Consistent with Rule 12(h)'s plain language and well-established authority, defendant [*687] Soviero waived his Rule 12(b)(2) defense of lack of personal jurisdiction by failing to raise the defense in his Rule 12 motion to dismiss. *Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) (noting that a defense of lack

of personal jurisdiction is waived "if not timely raised in the answer or a responsive pleading"); Fed. R. Civ. P. 12(h)(1)(A) ("A party waives any defense listed in Rule 12(b)(2)-(5) by: . . . omitting it from a motion in the circumstances described in Rule 12(g)(2) . . ."); Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").

## II.  CONCLUSION

Accordingly, for the foregoing reasons, Plaintiffs respectfully ask this Court to deny Defendant's Motion for Summary Judgment on the grounds that Defendant's liability for Plaintiffs' deaths under the TVPA can be proven at trial.

Respectfully submitted,

*FMG*

Faisal Gill (VSB 93255)
Gill Law Firm
1717 Pennsylvania Ave Suite 1025
Washington DC 20006
fgill@glawoffice.com
310-418-6675
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March, 2024, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record in this case:

*FMG*

Faisal Gill (VSB 93255)
Counsel for Plaintiffs